

1   ADRIENNE C. PUBLICOVER  (SBN 161432)
    MICHAEL K. BRISBIN  (SBN 169495)
2   WILSON, ELSER, MOSKOWITZ,
      EDELMAN& DICKER LLP
3   525 Market Street, 17th Floor
    San Francisco, CA  94105
4   Telephone:    (415) 433-0990
    Facsimile:    (415) 434-1370
5
    Attorneys for Plaintiff
6   **AMERICAN GENERAL LIFE**
    **INSURANCE COMPANY**
7



8

9
                    **UNITED STATES DISTRICT COURT**
10
        **NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**
11

12
    AMERICAN GENERAL LIFE          )   Case No.  **C07  02988  PVT**
13  INSURANCE COMPANY,             )
                                   )   **PLAINTIFF AMERICAN GENERAL**
14          Plaintiff,             )   **LIFE INSURANCE COMPANY'S**
                                   )   **COMPLAINT FOR DECLARATORY**
15      v.                         )   **RELIEF AND RESCISSION**
                                   )
16  SHIRLEY DE CASTRO,             )
                                   )
17          Defendant.             )
                                   )
18  _____)

19

20      Plaintiff AMERICAN GENERAL LIFE INSURANCE COMPANY ("AGLIC

21  or AMERICAN GENERAL"), a Texas corporation, alleges against Defendants

22
    SHIRLEY DE CASTRO ("DE CASTRO") as follows:
23

24
                    **JURISDICTION, VENUE AND THE PARTIES**
25      1.      The claims for relief contained in this Complaint are instituted, *inter*

26  *alia*, pursuant to 28 U.S.C. Section 2201, *et seq.*, and pursuant to Federal Rules of

27  Civil Procedure, Rule 57, to obtain declaratory judgment.

28                                    - 1 -

1    2.    AGLIC is a corporation organized and existing under the laws of the

2  State of Texas, and at all times herein mentioned was, a resident of Houston, Texas

3  and at all times relevant herein, was authorized to do business in California.

4    3.    AGLIC is informed and believes, and on that basis alleges, that

5  Defendant DE CASTRO is a citizen and resident of the State of California, and is

6  domiciled in San Jose, California.

7    4.    Federal diversity jurisdiction exists in this case pursuant to 28 U.S.C.

8  Section 1332 (a).

9    5.    This action involves an amount in controversy in excess of the minimum

10  jurisdictional amount of $75,000, exclusive of costs and interest, in that the face

11  amount of the policy at issue is $250,000.00.

12    6.    AGLIC is informed and believes, and on that basis alleges, that venue is

13  proper pursuant to 28 U.S.C. Section 1391 (a) (2) because a substantial part of the

14  events giving rise to the claim occurred in this district.

15    7.    AGLIC is informed and believes, and on that basis alleges, that the

16  decedent, Efren De Castro, applied for the subject life insurance policy by signing an

17  application in San Jose, California; that the subject policy was issued to Efren De

18  Castro in San Jose, California; the

19  Acknowledgment and Delivery Agreement was executed by Efren De Castro in San

20  Jose, California and Defendant Shirley De Castro is making her  claim while residing

21  in San Jose, California.

22  **GENERAL ALLEGATIONS**

23    8.    On April 30, 2005, decedent Efren De Castro completed an Part A of a

24  life insurance application for AMERICAN GENERAL seeking a face amount of

25  $250,000.00 in insurance.

26    9.    The Authorization and Signature section of Part A of the completed

27  application (a copy which is attached hereto as **Exhibit A**) reads, in part:

28

- 2 -

. Plaintiff American General Life Insurance Company's Complaint for Declaratory Relief and
Rescission
USDC NDCA Case No.

1
2
3
4
5
6
7
8
9
10
11

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if (1) it is within the contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect under this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

12
13
14
15
16
17

10.     AMERICAN GENERAL is informed and believes and on that basis alleges, decedent De Castro completed a paramedical exam on May 7, 2005 in San Jose, California. During the exam decedent De Castro executed the Statement by the Proposed Insured(s) in Part B of the Life Insurance Application which reads as follows (copy of which is attached as **Exhibit B**):

18
19
20
21
22
23
24
25
26
27

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if (1) it is within the contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect pursuant to this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

28

- 3 -

1        11. AMERICAN GENERAL is informed and believes and on that basis

2    alleges, decedent De Castro answered Part B questions 7A (4) as follows: Has any

3    proposed insured ever been diagnosed as having, been treated for, or consulted a

4    licensed health care provider for:

5        (4) diabetes, a disorder of the thyroid or other glands or a disorder of the

6        immune system, blood or lymphatic system?

7        In response to the above question decedent De Castro answered "NO" to 7A

8    (4).

9        12.   AMERICAN GENERAL is informed and believes and on that basis

10   alleges, Decedent De Castro also answered questions 7 F (1) & (2) in Part B: In the

11   past 10 years, has any proposed insured:

12       (1) been hospitalized, consulted a health care provider or had any illness, injury

13   or surgery?

14       (2) had any laboratory tests, treatments or diagnostic procedures, including x-

15   rays, scans or EKGs?

16       To question 7 F (1) decedent De Castro answered "NO"; to question 7 F (2)

17   decedent De Castro answered "YES" but failed to disclose prior laboratory tests, and

18   diagnostic procedures.

19       13.   In addition to the above questions, AMERICAN GENERAL is informed

20   and believes decedent De Castro answered question G of Part B of the Life Insurance

21   Application: Does any proposed insured have any symptoms or knowledge of any

22   other condition that is not disclosed above? Decedent De Castro's response was

23   "NO".

24       14.   AMERICAN GENERAL is informed and believes and on that basis

25   alleges that following receipt of Part A and Part B of the application, and completion

26   of the paramedical exam policy number YME0214554 was issued to decedent De

27   Castro on June 8, 2005.

28

. Plaintiff American General Life Insurance Company's Complaint for Declaratory Relief and
Rescission
USDC NDCA Case No.

1    15.    On or about May 3, 2006 AMERICAN GENERAL received notice that

2   decedent Efren De Castro passed following a heart attack. Thereafter, AMERICAN

3   GENERAL conducted a contestable investigation pursuant to the said provision

4   contained in policy number YME02145545. Said contestable investigation revealed

5   that decedent Efren De Castro failed to disclose repeated diabetes tests, a diagnosis of

6   diabetes, history of thyroid problems, and hyperthyroid diabetes. None of these

7   conditions were disclosed on decedent De Castro's Life Insurance Applications, Part

8   B, or during the paramedical examination.

9    16.    These significant discrepancies demonstrate material misrepresentations

10   as to decedent De Castro past medical history during the ten (10) years before his

11   completion of the life insurance application with AMERICAN GENERAL.

12    17.    AMERICAN GENERAL is informed and believes, and thereon alleges,

13   that based upon their review of decedent De Castro's medical history, decedent De

14   Castro failed to disclose substantive relevant material information that would have

15   changed AMERICAN GENERAL'S evaluation and underwriting of De Castro's life

16   insurance policy. If AMERICAN GENERAL had known of De Castro's prior

17   medical history AMERICAN GENERAL would not have issued, as applied for, life

18   insurance policy number YME0214554 to him.

19

20    **FIRST CLAIM FOR RELIEF**

21    **Declaratory Relief and Rescission**

22    18.    AMERICAN GENERAL re-alleges and incorporates by reference

23   paragraphs 1 through 17 above as though fully set forth herein.

24    19.    An actual controversy has arisen and now exists between Defendant DE

25   CASTRO and Plaintiff AMERICAN GENERAL concerning life insurance policy

26   number YME0214554, specifically as follows:

27

28

. Plaintiff American General Life Insurance Company's Complaint for Declaratory Relief and
Rescission
USDC NDCA Case No.

1              (a)      AMERICAN GENERAL is informed and believes and thereon
2   alleges decedent De Castro's answers on Part B of the application, and during the
3   paramedical exam, failed to disclose any part of De Castro's prior significant medical
4   history;

5              (b)      AMERICAN GENERAL is informed and believes and thereon
6   alleges that decedent De Castro submitted answers to Part B of the life insurance
7   application on May 7, 2005; and during the paramedical exam which were false,
8   misleading, and fraudulent in an attempt to obtain life insurance that he would not
9   otherwise have been able to obtain;

10             (c)      AMERICAN GENERAL is informed and believes and thereon
11  alleges that had they known of decedent De Castro's prior medical history at any time
12  he applied for the life insurance policy, they would not have issued the life insurance
13  policy, as applied for, to him.

14             (d)      AMERICAN GENERAL is informed and believes and thereon
15  alleges that Defendant DE CASTRO believes she is entitled to the life insurance
16  policy proceeds and the benefits which emanate there under;

17             (e)      AMERICAN GENERAL is informed and believes the policy is
18  void and they are entitled to rescind the policy based upon decedent De Castro's
19  material misrepresentations and omissions; and

20             (f)      AMERICAN GENERAL is informed and believes and thereon
21  alleges that if it is determined at trial that material misrepresentations or omissions
22  were made by decedent De Castro then life insurance policy number YME0214554
23  will be void.

24      20.    By reason of the foregoing, there exists now an actual, justiciable,
25  controversy among the parties. The Court is vested with the power to declare the
26
27
28
                                    - 6 -

1  rights and legal relationships of the parties to this action with reference to the issues

2  raised by this complaint.

3

4  21.    AMERICAN GENERAL desires a judicial determination of the rights

5  and obligations of each of the parties to this action with respect to the policy

6  discussed in this complaint and attached as **Exhibit C**.

7

8  22.    A judicial determination is necessary and appropriate at this time in

9  order that each of the parties may ascertain their respective rights and duties as to one

10  another and may conduct themselves accordingly now and in the future.

11

12  <u>**PRAYER**</u>

13  1.    That this Court decree that the complaint is properly filed and that this is

14  a proper cause for declaratory relief;

15  2.    That the Court enter an order restraining Defendant DE CASTRO from

16  instituting or further prosecuting any other proceeding that affects the rights and

17  obligations among the parties to this complaint until further order of the Court;

18  3.    For declaratory judgment by this Court decreeing the rights and

19  obligations of the parties under the Policy in accordance with the parties' contentions

20  as set forth above;

21  4.    That the Court enter an order rescinding life insurance policy number

22  YME0214554 *Ab initio;*

23  5.    For costs of suit incurred herein; and

24  6.    For such other and further relief as this Court deems just and proper.

25

26

27

28

. Plaintiff American General Life Insurance Company's Complaint for Declaratory Relief and Rescission
USDC NDCA Case No.

1  | Date: June 7, 2007

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____

Adrienne C. Publicover
Michael K. Brisbin
Attorneys for Plaintiff **AMERICAN GENERAL LIFE INSURANCE COMPANY**

- 8 -

. Plaintiff American General Life Insurance Company's Complaint for Declaratory Relief and Rescission
USDC NDCA Case No.

# EXHIBIT A

**YME0214554**

 **AMERICAN GENERAL**

**Part A  Life Insurance Application**
**California Version**

RECEIVED

MAY 1 2 2005

☒ **American General Life Insurance Company, Houston, TX**
☐ **The United States Life Insurance Company in the City of New York, New York, NY**

*Member companies of American International Group, Inc.*

In this application, "Company" refers to the insurance company whose name is checked above.

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

| Personal Information |
| --- |

**1. Primary Proposed Insured**

Name _EFREN V. DE CASTRO_    Social Security # _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_    Sex ☒ M ☐ F

Birthplace *(state, country)* _Philippines_    Date of Birth _04-13-54_    Age _51_

**Tobacco use** Have you ever used any form of tobacco or nicotine products? ☒ yes ☐ no  If yes, date of last use _1998_

If yes, *type and quantity* of tobacco or nicotine products used _1 pack a day, cigarettes only_

Driver's License No. _D3402410_    State _CA_ U.S. Citizen ☐ yes ☒ no  If no, Date of Entry _____ Visa Type___

Address _1058 WOODMINSTER DR_    City, State _San Jose, CA_    ZIP _95121_

Home Phone _(408) 297-3793_  Work Phone _(408) 271-0300_    E-mail Address _—_

Employer _ATC PARATRANSIT of San Jose_  Occupation _driver_    Length of Employment _2.5 yr_

Employer Address _1535 S 10th St_    City, State _San Jose, CA_    ZIP _95112_

Duties _DRIVER_

Personal Income $ _35,000_    Household Income $ _65,000_    Net Worth $ _400,000_

**2. Other Proposed Insured**

Name _____    Social Security # _____ Sex ☐ M ☐ F

Birthplace *(state, country)*_____    Date of Birth _____ Age _____

Relationship to Primary Proposed Insured_____

**Tobacco use** Have you ever used any form of tobacco or nicotine products? ☐ yes ☐ no  If yes, date of last use _____

If yes, *type and quantity* of tobacco or nicotine products used _____

Driver's License No. _____ State____ U.S. Citizen ☐ yes ☐ no  If no, Date of Entry_____ Visa Type___

Address _____ City, State _____ ZIP _____

Home Phone ( )_____ Work Phone ( )_____    E-mail Address _____

Employer _____ Occupation_____ Length of Employment _____

Employer Address _____ City, State _____ ZIP _____

Duties _____

Personal Income $ _____ Household Income $ _____ Net Worth $ _____

**3. Child Rider** *(Complete if a proposed insured requests child riders. If more than three children, list information in the Remarks section. Remember to complete Part B, sections 3-7, for all proposed insured children.)*

| Child Name | Sex | Birthplace *(state, country)* | Date of Birth |
| --- | --- | --- | --- |
| _____ | ☐ M ☐ F | _____ | _____ |
| _____ | ☐ M ☐ F | _____ | _____ |
| _____ | ☐ M ☐ F | _____ | _____ |



---

**Ownership**

**4. Owner**    ☒ Primary Proposed Insured    ☐ Other Proposed Insured    ☐ Trust    ☐ Other than a Proposed Insured or Trust
A. Complete if the proposed insured is not the owner *(If contingent owner is required, use Remarks section.)*

Name_____    Social Security or Tax ID #_____    Date of Birth _____

Address_____    City, State _____    ZIP_____

Home Phone (_____)_____    Relationship to Primary Proposed Insured _____

B. Complete if owner is a trust *(If trustee is premium payor, also complete section 14 D.)*

Exact Name of Trust_____    Trust Tax ID #_____

Current Trustee(s) _____    Date of Trust _____

**Product Information**

**5.** Product Name *(If variable, complete appropriate supplement.)* ___LT6 ultra 1S_____

Amount Applied For: Base Coverage $ __250, 000__    Supplemental Coverage *(If applicable)* $_____
Death Benefit Compliance Test Used *(If applicable):* ☐ Guideline Premium ☐ Cash Value Accumulation
Automatic Premium Loan *(If applicable):* ☐ Yes  ☐ No
Premium Class Quoted ___Class 2, it Class 1 → $300,000___
Reason for Insurance___mortgage protection_____

**6. Dividend Options** *(For participating policy only.)*
☐ Cash    ☐ Premium Reduction    ☐ Paid-up Additions    ☐ Deposit Earning Interest    ☐ Other *(Explain)*_____

**7. Death Benefit Options** *(For UL & VUL only.)* ☐ Option 1 - Level ☐ Option 2 - Increasing ☐ Option 3 – Level Plus Return of Premium

**8. Riders**    ☐ Waiver of Premium    ☐ Waiver of Monthly Deduction    ☐ Waiver of Monthly Guarantee Premium
☐ Maturity Extension Rider – Accumulation Value    ☐ Maturity Extension Rider – Death Benefit    ☐ Terminal Illness Rider

☐ Accidental Death Benefit $_____    ☐ Other Insured $ _____    ☐ Child $_____

☐ Spouse $ _____    Plan _____    ☐ Other Rider(s) _____

**Beneficiary**

**9. Primary**    Name SHIRLEY P. DE CASTRO    Relationship ___wife___    % Share 100

Name _____    Relationship _____    % Share _____

**10. Contingent**    Name ERAMELISSE DE CASTRO    Relationship ___daughter___    % Share 50

Name PATRICIA A. DE CASTRO    Relationship ___daughter___    % Share 50

**11. Trust Information**    Exact Name of Trust_____    Trust Tax ID #_____

Current Trustee(s) _____    Date of Trust _____

**12. Rider Beneficiaries** Spouse Rider _____    Child Rider _____

**Business Coverage**

**13. Business Details** *(Complete only if applying for business coverage.)*
Does any proposed insured have an ownership interest in the business? ☐ yes ☐ no
If yes, what is the percentage of ownership for the: Primary Proposed Insured _____    Other Proposed Insured _____
If buy-sell, stock redemption, or key person insurance, will all partners or key people be covered? ☐ yes ☐ no
Describe any special circumstances._____

**Premium**

**14. Premium Payment**    ☒ Modal $___51. 84___    ☐ Single $_____    ☐ Additional Initial $_____

A. Frequency of modal premium:    ☐ Annual    ☐ Semi-annual    ☐ Quarterly    ☒ Monthly (Bank draft)

B. Method:    ☐ Direct Billing    ☒ Bank Draft *(Complete Bank Draft Authorization.)*    ☐ List Bill: Number _____
☐ Other *(Please explain.)* _____

C. Amount submitted with application $ ___51. 84___

D. Premium Payor *(Complete if other than proposed insured.)*

Name_____    Social Security or Tax ID #_____    Home Phone (_____)

Address_____    City, State _____    ZIP_____

AGLC 100565-CA    Page 2 of 7

| Existing Coverage |
|---|

**15. Other Life Insurance or Annuities**  *(Indicate life insurance policies or annuities in force or pending for the proposed insured(s).)*
Does any proposed insured have any existing or pending annuity or life insurance contracts?  ☐ yes ☒ no
*(If yes, indicate life insurance policies or annuities in force or pending for the proposed insured(s).)*

**Type:  i** = individual, **b** = business, **g** = group, **p** = pending life insurance or annuity

| Name of Proposed Insured | Policy Number | Insurance Company | Type(s) *(see above)* | Year of Issue | Face Amount | Replace* | 1035 Ex |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  | ☐ yes | ☐ yes |
|  |  |  |  |  |  | ☐ yes | ☐ yes |
|  |  |  |  |  |  | ☐ yes | ☐ yes |
|  |  |  |  |  |  | ☐ yes | ☐ yes |

* **Replace** means that the insurance being applied for may replace, change or use any monetary value of any existing or pending life insurance policy or annuity.  If replacement may be involved, complete and submit replacement-related forms.  Please note: certain states require completion of replacement related forms even when other life insurance or annuities are not being replaced by the policy being applied for.

| Limited Temporary Life Insurance Eligibility |
|---|

**16. Health and Age Questions**  *(If any proposed insured answers yes to either question, temporary insurance is not available, the agreement will be void and any payment submitted will be refunded.)*

**A.** Has any proposed insured ever had a heart attack, stroke, cancer, diabetes or disorder of the immune system, or during the last two years been confined in a hospital or other health care facility or been advised to have any diagnostic test or surgery not yet performed?  ☐ yes ☒ no
**B.** Is any proposed insured age 71 or above?  ☐ yes ☒ no

| Nonmedical Questions |
|---|

**17. Background Information**  *(Complete questions A through F for all proposed insureds who are applying. If answer applies to any proposed insured, provide details specified after each question.)*
**A.** Do any proposed insureds intend to travel or reside outside of the United States or Canada within the next two years?  ☐ yes ☒ no
*(If yes, list proposed insured's name, country, date, length of stay and purpose.)* _____

**B.** In the past five years, have any proposed insureds participated in, or do they intend to participate in: any flights as a trainee, pilot or crew member, scuba diving, skydiving or parachuting, ultralight aviation, auto racing, cave exploration, hang gliding, boat racing, mountaineering, extreme sports or other hazardous activities?  ☐ yes ☒ no
*(If yes, circle the applicable activities and complete the Aviation and/or Avocation Questionnaire.)*
**C.** Have any proposed insureds:

1) During the past 90 days submitted an application for life insurance to any other company or begun the process of filling out an application?
*(If yes, list proposed insured's name, company name, amount applied for, purpose of insurance and if app will be placed.)*  ☐ yes ☒ no
_____

2) Ever had a life or disability insurance application modified, rated, declined, postponed, withdrawn, canceled or refused for renewal?
*(If yes, list proposed insured's name, date and reason.)*  ☐ yes ☒ no
_____

**D.** Have any proposed insureds ever filed for bankruptcy?  *(If yes, list proposed insured's name, chapter filed, date, reason and if discharged.)*  ☐ yes ☒ no
_____

**E.** In the past five years, have any proposed insureds been charged with or convicted of driving under the influence of alcohol or drugs or had any driving violations?  *(If yes, list proposed insured's name, date, state, license no. and specific violation.)*  ☐ yes ☒ no
_____

**F.** Have any proposed insureds ever been convicted of, or pled guilty or no contest to a felony, or do they have any such charge pending against them?  *(If yes, list proposed insured name, date, state and felony.)*  ☐ yes ☒ no

| Remarks |
|---|

**18. Details and Explanations** _____

---

| **Authorization and Signatures** |
|---|

**American General Life Insurance Company, Houston, TX**       **The United States Life Insurance Company in the City of New York, New York, NY**

The above listed life insurance company as selected on page one of this application is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments. In this application, "Company" refers to the insurance company which was selected on page one.

### Authorization to Obtain and Disclose Information and Declaration

I give my consent to all of the entities listed below to give to the Company, its legal representative, American General Life Companies (AGLC) (an affiliated service company), and affiliated insurers all information they have pertaining to: medical consultations, treatments, or surgeries; hospital confinements for physical and mental conditions; use of drugs or alcohol; or any other information for me, my spouse or my minor children. Other information could include items such as: personal finances; habits; hazardous avocations; motor vehicle records from the Department of Motor Vehicles; court records; or foreign travel, etc. I give my consent for the information outlined above to be provided by: any physician or medical practitioner; any hospital, clinic or other health care facility; any insurance or reinsurance company; any consumer reporting agency or insurance support organization; my employer; or the Medical Information Bureau (MIB).

I understand the information obtained will be used by the Company to determine: (1) eligibility for insurance; and (2) eligibility for benefits under an existing policy. Any information gathered during the evaluation of my application may be disclosed to: reinsurers; the MIB; other persons or organizations performing business or legal services in connection with my application or claim; me; any physician designated by me; or any person or entity required to receive such information by law or as I may further consent.

I, as well as any person authorized to act on my behalf, may, upon written request, obtain a copy of this consent. I understand this consent may be revoked at any time by sending a written request to the Company, Attn: Underwriting Department at P.O. Box 1931, Houston, TX 77251-1931.

This consent will be valid for 24 months from the date of this application. I agree that a copy of this consent will be as valid as the original. I authorize AGLC or affiliated insurers to obtain an investigative consumer report on me. I understand that I may: request to be interviewed for the report; and receive, upon written request, a copy of such report.  ☐ Check if you wish to be interviewed.

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect under this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurer's rights or requirements.

I have received a copy of the Notices to the Proposed Insured.

Limited Temporary Life Insurance Agreement – If eligible, I have received and accepted the LTLIA. Such insurance is available only if: (1) the full first modal premium is submitted with this application; and (2) only "no" answers have been given by any proposed insured to the Health and Age Questions.

Under penalties of perjury, I certify: **(1)** that the number shown on this application is my correct Social Security or Tax ID number; and **(2)** that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code; and **(3)** that I am a U.S. person (including a U.S. resident alien). **The Internal Revenue** Service does not require my consent to any provisions of this document other than the certifications required to avoid backup withholding. **You must cross out item (2) if you are subject to backup withholding and cross out item (3) if you are not a U.S. person (including a U.S. resident alien).**

### Proposed Insured(s)/Owner Signature(s)

Signed at *(city, state)* _____ SAN JOSE, CA _____   On *(date)* _____ 04 | 30 | 05 _____

(X) _~signature~_

X _____

Primary Proposed Insured *(If under age 15, signature of parent or guardian)*   Other Proposed Insured *(If under age 15, signature of parent or guardian)*

X _____

Owner *(If other than proposed insured)*

### Agent(s) Signature(s)

I certify that the information supplied by the proposed insured(s)/owner has been truthfully and accurately recorded on the Part A application.

_____ INGA  UINTERE _____     _____ 1JC 34 _____

Writing Agent Name *(please print)*     Writing Agent #

X _~signature~_     X _____

Writing Agent Signature     Countersigned *(Licensed resident agent if state required)*

---

If the Company needs to contact the proposed insured(s), when would be the best time to call?

| Time   ANY | Day of the Week  ANY | Date   ANY | Phone # (510) 742 – 1210 |
|---|---|---|---|

AGLC 100565-CA     Page 4 of 7

| Agent's Report |
| --- |

1. **Statements**
   A. Number of years you have known: Primary Proposed Insured ___Ø___ Other Proposed Insured ___
   B. I have ordered/obtained the following requirements: ☐ APS  ☒ Blood Profile/Urinalysis  ☐ EKG  ☐ Inspection Report
      ☐ MD Exam  ☐ Oral Fluids *(as state permits)*  ☒ Paramedical Exam  ☐ Treadmill  ☐ Unnalysis Only
   C. If requirements are scheduled, please provide name of examiner, clinic and date ordered. __IMS, 05/07/05 @ 9am__

   D. Did you personally see the proposed insured(s) on the date of this application. ask each question, and accurately record
      the answers yourself? *(If no, please provide details in the Remarks section below.)*   ☒ yes ☐ no
   E. Does any proposed insured have any existing or pending annuity or life insurance contracts?   ☐ yes ☒ no
      If yes, do you have any information that indicates that any proposed insured may replace, change, or use any monetary value
      of any existing or pending life insurance policy or annuity with any company in connection with the purchase of insurance?   ☐ yes ☒ no
      *(If yes, please provide details in the Remarks section below and attach all replacement-related forms. Certain states require
      completion of replacement-related forms even when other life insurance or annuities are not being replaced by the policy
      being applied for.)*
   F. Are you aware of any information that would adversely affect any proposed insured's eligibility, acceptability, or insurability?
      *(If yes. please provide details in the Remarks section below. and do not provide limited temporary life insurance.)*   ☐ yes ☒ no
   G. Did you provide the client with a Limited Temporary Life Insurance Agreement?   ☒ yes ☐ no
   H. Have any of the proposed insureds or the owner submitted an application for coverage with any insurance member of the
      American International Group, Inc. within the last 30 days?   ☐ yes ☒ no
   I. If primary proposed insured is a child or age 18 and over and not self-supporting, what
      amount of insurance is in force on the father? $ _____ and/or mother? $ _____ and/or siblings? $ _____
   J. Are you related by blood or marriage to any proposed insured?   ☐ yes ☒ no
      *(If yes, relationship)* _____

| Remarks |
| --- |

2. **Details and Explanations** *(Please include information on any split dollar, collateral assignment, etc.)* _____

| Commission |
| --- |

3. **Agent/Agency Information** *(Please list servicing agent first.)*

| Agent(s) to Receive Commission | Agency Number | Agent Number | Percent of Split | Broker-Dealer (if variable) |
| --- | --- | --- | --- | --- |
| INGA VINTERE | IJC 17 | 1JC34 | 100% | ☐ AGSI  ☐ Other: ___ |
|  |  |  |  | ☐ AGSI  ☐ Other: ___ |
|  |  |  |  | ☐ AGSI  ☐ Other: ___ |
|  |  |  |  | ☐ AGSI  ☐ Other: ___ |

Writing Agent **X** _____   Date __4/30/05__
Social Security or Tax ID # __603 - 41 - 7015__   Phone # ( 510 ) 742 - 1210
E-mail Address ___ — ___   Fax # ( 510 ) 742 - 7112
For Broker-Dealer use
Processing Center _____   Contact Person _____   Phone # ( __ )
Servicing Agent (if other than writing agent) send policy/delivery requirements to _____

| Bank Draft Information |
| --- |

☒ American General Life Insurance Company, Houston, TX     ☐ The United States Life Insurance Company in the City of New York, New York, NY

The company checked above will withdraw the premiums from the specified account. This company will be referred to hereafter as "Company", "You", "your", "I" and "me" refer to the bank account owner whose name appears below.

How automatic bank draft works: Automatic bank draft is a debit service that offers a convenient way to pay life insurance premiums. The Company will collect the life insurance premiums from your bank account electronically – you do not need to write checks or mail in any payments. Premium withdrawals will appear on your bank statement. and your statements will be your receipts for payment of your premium.

### Automatic bank draft agreement

I hereby authorize and request the Company to initiate electronic or other commercially accepted-type debits against the indicated bank account in the depository institution named ("Depository") for the payment of premiums and other indicated charges due on the insurance policy, and to continue to initiate such debits in the event of a conversion. renewal, or other change to any such contract(s). I hereby agree to indemnify and hold the Company harmless from any loss, claim or liability of any kind by reason or dishonor of any debit.

I understand that this authorization will not affect the terms of the contract(s), other than the mode of payment, and that if premiums are not paid within the applicable grace period, the contract(s) will terminate, subject to any applicable nonforfeiture provision. I acknowledge that the debit appearing on my bank statement shall constitute my receipt of payment. but no payment is deemed made until the Company receives actual payment. I agree that this authorization may be terminated by me or the Company at any time and for any reason by providing written notice of such termination to the nonterminating party and may be terminated by the Company immediately if any debit is not honored by the Depository named for any reason. This must be dated and signed by the bank account owner(s) as his/her name appears on bank records for the account provided on this authorization.

Financial Institution Name _____ BANK OF AMERICA

Financial Institution Address 4150 MONTEREY HWY City, State ___ San Jose, CA ___ ZIP ___

Routing Number   1 2 1 0 0 0 3 5 8

Account Number   0 9 0 4 5 0 7 8 0 3

Type of Account:   ☒ Checking   ☐ Savings     Credit Union:  ☐ yes   ☒ no

Name of Primary Proposed Insured __ EFREN V. DE CASTRO ___ Premium Amount $ __ 51.84

Frequency:   ☐ Annual   ☐ Semi-annual   ☐ Quarterly   ☒ Monthly

Preferred Withdrawal Date (1st-28th) _____ 15 _____   ☐ Please debit my account for all outstanding premiums due.

Print Bank Account Owner(s) Name__ SHIRLEY & EFREN DE CASTRO

Signature(s) of Bank Account Owner(s) X _____

Please attach a voided check.

SHIRLEY ANN PRINCECH DECASTRO
EFREN V DECASTRO                                              1327
408 297-3793
1058 WOODMINSTER DR                          DATE 4/30/05      11-35/1210
SAN JOSE, CA 95121                                              954

PAY TO THE
ORDER OF ___ AMERICAN/ GENERAL ___ $ 92.53

___ NINETY TWO and fifty three ___ DOLLARS

Bank of America
Seven Trees Center
4150 Monterey Hwy
San Jose CA
408 983 0688

FOR ___ MRI ___

⑆121000358⑆ 1327⑈ 090450780 31⑈

# EXHIBIT B

May 08'05 08:37p     Lolita Ancheta          (408) 244-2021          p.1

**AIG**  **AMERICAN GENERAL**          **Part B  Life Insurance Application**

☐ American General Life Insurance Company, Houston, TX
☐ The United States Life Insurance Company in the City of New York, New York, NY

Members of American International Group, Inc.

In this application, "Company" refers to the insurance company whose name is checked above.
The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

| Personal Information |
|---|

**1. Primary Proposed Insured**
Name  EFREN DE CASTRO      Date of Birth 04/13/54   Social Security # 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

**2. Other Proposed Insured**
Name _____ N/A _____   Date of Birth _____   Social Security # _____

**3. Children** *(Provide name and date of birth for all children.)*
_____

| Medical History |
|---|

**4. Physician Information**

Name and address of each proposed insured's personal physician(s). *(Write None if proposed insured(s) do not have one.)*

Primary Proposed Insured  KAISER  PERMANENTE  SANTA TERESA  SAN JOSE CA
Other Proposed Insured  MEDICAL  RECORDS #  11430496   1503-964-4000
Child(ren) _____

Name of insured, date, reason, findings and treatment at last visit  JAN . 2005  ...
PHYSICAL  CHECK-UP  -  FOLLOW  TO  CHECK  BLOOD
PRESSURE  -  CLIENT U.S  DIAGNOSED W/  HIGH  B.P
2003 .

**5. Height and Weight**
Primary Proposed Insured  5 ft. 6 in. 164 lbs.  Other Proposed Insured ___ ft. ___ in. ___ lbs.
Child Name _____ ___ ft. ___ in. ___ lbs.  If less than 1 yr. old, weight at birth _____
Child Name ____ N/A ____ ___ ft. ___ in. ___ lbs.  If less than 1 yr. old, weight at birth _____
Child Name _____ ___ ft. ___ in. ___ lbs.  If less than 1 yr. old, weight at birth _____
Has any proposed insured had any weight change in excess of 10 lbs. in the past year?  ☐ yes ☑ no  If yes, complete:
Name _____  Loss☐ lbs.  Gain☐ lbs.  Reason _____

**6. Family History**

| | Age if Living | Age at Death | Heart Disease? | Cancer History? |
|---|---|---|---|---|
| **Primary Proposed Insured** | | | | |
| Father | | 62 | ☑ No ☐ Yes, age of onset ___ | ☑ No ☐ Yes, age of onset ___ Type _____ |
| Mother | | 60 | ☑ No ☐ Yes, age of onset ___ | ☐ No ☑ Yes, age of onset 60 Type PANCREATIC CANCER |
| **Other Proposed Insured** | N/A | | | |
| Father | | | ☐ No ☐ Yes, age of onset ___ | ☐ No ☐ Yes, age of onset ___ Type _____ |
| Mother | | | ☐ No ☐ Yes, age of onset ___ | ☐ No ☐ Yes, age of onset ___ Type _____ |

AGLC 100563-2003                                                          Page 1 of 4

May 08' 05 08:38p    Lolita Ancheta        (408) 244-2021        p.2

**7. Personal Health History**

*Complete questions A through G for all proposed insureds who are applying. If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

A. Has any proposed insured ever been diagnosed as having, been treated for, or consulted a licensed health care provider for:

1) heart disease, heart attack, chest pain, irregular heartbeat, heart murmur, high cholesterol, high blood pressure or other disorder of the heart? ☑ yes ☐ no

2) a blood clot, aneurysm, stroke, or other disease, disorder or blockage of the arteries or veins? ☐ yes ☑ no

3) cancer, tumors, masses, cysts or other such abnormalities? ☐ yes ☑ no

4) diabetes, a disorder of the thyroid or other glands or a disorder of the immune system, blood or lymphatic system? ☐ yes ☑ no

5) colitis, hepatitis or a disorder of the esophagus, stomach, liver, pancreas, gall bladder or intestine? ☐ yes ☑ no

6) a disorder of the kidneys, bladder, prostate or reproductive organs or sugar or protein in the urine? ☐ yes ☑ no

7) asthma, bronchitis, emphysema, sleep apnea or other breathing or lung disorder? ☐ yes ☑ no

8) seizures, a disorder of the brain or spinal cord or other nervous system abnormality, including a mental or nervous disorder? ☐ yes ☑ no

9) arthritis, muscle disorders, connective tissue disease or other bone or joint disorders? ☐ yes ☐ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| I A1 - DIAGNOSED WITH HIGH BLOOD PRESSURE IN 2002 | |
| DR. ROMOS PHYSICIANS MEDICAL GROUP SAN JOSE CA | |
| (408) 272-1408 - COULD NOT REMEMBER FULL ADDRESS OF | |
| DR. POLITO RAMOS. BEEN TAKING SINCE 2003 | |
| SWITCHED TO ANOTHER DOCTOR IN 2005 DR. HOONGTON | |
| SANTA TERESA KAISER PERMANENTE. - UNDER CONTROL. | |

B. Is any proposed insured currently taking any medication, treatment or therapy or under medical observation? ☑ yes ☐ no
*(If yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| MEDICATIONS FOR HYPERTENSION: | |
| HYDROCHLOROTHIAZIDE 25 mg 1 tablet a day | |
| METOPROLOL 25 mg 1 tab a day | |

C. Has any proposed insured in the past three years had but not sought treatment for:

1) fainting spells, nervous disorder, headaches, convulsions or paralysis? ☐ yes ☑ no

2) any pain or discomfort in the chest or shortness of breath? ☐ yes ☑ no

3) disorders of the stomach, intestines or rectum, or blood in the urine? ☐ yes ☑ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| | |

| Name of Proposed Insured | Details | ☐ yes ☐ no |
|---|---|---|
| MEDICATIONS FOR HYPERTENSION: | | |
| HYDROCHLOROTHIAZIDE 25 mg 1 tablet a day | | |
| METOPROLOL 25 mg 1 tab a day | | |

May 08' 05 08:38p Lolita Ancheta (408) 244-2021 p.3

**Personal Health History (cont.)**

*If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

D. Has any proposed insured ever

1) sought or received advice, counseling or treatment by a medical professional for the use of alcohol or drugs, including prescription drugs? ☐ yes ☑ no

2) used cocaine, marijuana, heroin, controlled substances or any other drug, except as legally prescribed by a physician? ☐ yes ☑ no

*(If yes answered to D1 or D2, complete Drug/Alcohol Questionnaire.)*

E. Has any proposed insured ever been diagnosed or treated by any member of the medical profession for AIDS Related Complex (ARC) or Acquired Immune Deficiency Syndrome (AIDS)? *(If yes, explain.)* ☐ yes ☐ no

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |

F. In the past 10 years, has any proposed insured

1) been hospitalized, consulted a health care provider or had any illness, injury or surgery? ☐ yes ☑ no

2) had any laboratory tests, treatments or diagnostic procedures, including x-rays, scans or EKGs? ☑ yes ☐ no

3) been advised to have any diagnostic test, hospitalization or treatment that was not completed? ☐ yes ☑ no

4) received or claimed disability or hospital indemnity benefits or a pension for any injury, sickness, disability or impaired condition? ☐ yes ☑ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| FZ - H-D X-RAY IN 1998 - JOB REQUIREMENTS | |
| NEGATIVE - HER WORK CLINIC MANILA PHILIPPINES. | |
| PHILIPPINE AIR LINES | |
| | |
| | |
| | |

G. Does any proposed insured have any symptoms or knowledge of any other condition that is not disclosed above? *(If yes, explain.)* ☐ yes ☑ no

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

AGLC 400548-2001

Page 3 of 4

# EXHIBIT C

# AMERICAN GENERAL LIFE Insurance Company

2727-A Allen Parkway, Houston, Texas 77019 1-800-487-5433

American General Life Insurance Company, a stock company, referred to in this policy as we/us/our, will pay the benefits of this policy subject to its provisions. This page and the pages that follow are part of this policy.

Signed at our home office at 2727-A Allen Parkway, Houston, Texas 77019.

*Elizabeth M. Tuck*

Secretary

*Matthew E. Winter*

President

### READ YOUR POLICY

This policy is a legal contract between the owner and American General Life Insurance Company. Read your policy carefully.

### RIGHT TO RETURN POLICY

The owner may return this policy to us at the above address or to the agent from whom it was purchased within 30 days after receipt. This policy will then be cancelled as of its date of issue and any premium paid will be refunded.

| | |
|---|---|
| Renewable Level Benefit Term Life Policy | Adjustable Premium |
| Premiums Payable During Term | |
| Insurance Payable in Event of Death Prior to Expiry Date | No Dividends |
| New Policy Option | Re-Entry Option |

**TABLE OF CONTENTS**

| Page | Title of Provision |
|------|--------------------|
| 8 | Assignment |
| 8 | Beneficiary |
| 8 | Change of Owner or Beneficiary |
| 8 | Claims of Creditors |
| 8 | Contract |
| 8 | Correspondence |
| 5 | Definitions |
| 5 | Grace Period |
| 5 | Incontestability |
| 8 | Misstatement of Age or Sex |
| 6 | New Policy Option |
| 8 | Nonparticipating |
| 8 | Owner |
| 5 | Payment of Proceeds |
| 8A | Payment Options |
| 8B, 8C, 8D | Payment Options Monthly Income Table |
| 8 | Policy Settlement |
| 3 | Policy Specifications |
| 5 | Premium Payment |
| 1 | Read Your Policy |
| 7 | Re-Entry Option |
| 5 | Reinstatement |
| 6 | Renewal Option |
| 6 | Right To Change Premium |
| 1 | Right To Return Policy |
| 3 | Schedule of Benefits and Premiums |
| 5 | Suicide |
| 4 | Table of Premiums |

See Supplemental Benefit Pages For Riders, If Any.

## POLICY SPECIFICATIONS

| | | | |
|---|---|---|---|
| Insured | Efren V De Castro | Policy Number | YME0214554 |
| Face Amount | $250,000 | Date of Issue | June 8, 2005 |
| Sex | MALE | Age at Issue | 51 |
| Underwriting Class | Standard Plus Non-Tobacco | | |

## SCHEDULE OF BENEFITS AND PREMIUMS

| Benefits | Benefit Amounts | Annual Premium | Years Payable |
|---|---|---|---|
| Life Insurance | $250,000 | $805.00 | 15 Years* |
| Total Initial Annual Premium | | $805.00 | |

Premiums payable other than annually are equal to a percentage of the annual premium. These percentages are shown on page 4. Premiums for this policy are initially payable at Monthly intervals. The first Monthly premium is $0.00.

*Annual renewal premiums are shown in the table of premiums on page 4. On the fifteenth policy anniversary and any later policy anniversary we have a right to change the premium. See the Right To Change Premium provision.

Expiry dates. The initial expiry date is June 8, 2020. Subsequent expiry dates will occur at the end of each one year renewable term period. The final expiry date is June 8, 2049.

New Policy Option. This policy may be exchanged for a new policy as specified in the New Policy Option provision. This option is available until the fifteenth policy anniversary, provided the insured is age 75 or less on the date of exchange.

Re-Entry Option. This policy may be exchanged for a new policy as specified in The Re-Entry Option provision. This option is available only on the fifteenth policy anniversary, provided the insured is age 75 or less on the date of exchange.

# DUPLICATE

TABLE OF PREMIUMS

| Policy Year | Current Annual Life Insurance Premium | Maximum Annual Life Insurance Premium | Policy Year | Current Annual Life Insurance Premium | Maximum Annual Life Insurance Premium |
|---|---|---|---|---|---|
| 1-15 | $805.00 | $805.00 | 30 | $46,895.00 | $46,895.00 |
| 16 | $10,995.00 | $11,760.00 | 31 | $51,320.00 | $51,320.00 |
| 17 | $11,920.00 | $12,990.00 | 32 | $56,320.00 | $56,320.00 |
| 18 | $12,902.50 | $14,310.00 | 33 | $61,955.00 | $61,955.00 |
| 19 | $14,020.00 | $15,750.00 | 34 | $68,115.00 | $68,115.00 |
| 20 | $15,390.00 | $17,375.00 | 35 | $74,660.00 | $74,660.00 |
| 21 | $17,022.50 | $19,515.00 | 36 | $81,460.00 | $81,460.00 |
| 22 | $18,870.00 | $21,340.00 | 37 | $88,455.00 | $88,455.00 |
| 23 | $20,920.00 | $23,780.00 | 38 | $95,505.00 | $95,505.00 |
| 24 | $23,157.50 | $26,520.00 | 39 | $102,705.00 | $102,705.00 |
| 25 | $27,875.00 | $29,460.00 | 40 | $110,155.00 | $110,155.00 |
| 26 | $32,590.00 | $32,590.00 | 41 | $117,980.00 | $117,980.00 |
| 27 | $35,880.00 | $35,880.00 | 42 | $126,435.00 | $126,435.00 |
| 28 | $39,295.00 | $39,295.00 | 43 | $135,875.00 | $135,875.00 |
| 29 | $42,920.00 | $42,920.00 | 44 | $147,885.00 | $147,885.00 |

The premiums shown above are annual life insurance premiums. Premiums payable other than annually are computed by multiplying the applicable annual premium by the premium percentages shown below.

Premium Interval                          Premium Percentage

Semi-annual                               52.00%
Quarterly                                 26.50%
Monthly (Pre-authorized checking)         8.75%

## DEFINITIONS

**Age or attained age** means the insured's age nearest birthday at the beginning of a policy year.

**Policy months, policy years, and anniversaries.** The first policy year begins on the date of issue shown on page 3. Subsequent policy months, years and anniversaries will be measured from that date.

## PAYMENT OF PROCEEDS

Proceeds will be payable on the date of the insured's death. This policy will terminate upon the earlier of (1) the date of the insured's death, or (2) the final expiry date.

Upon receipt of due proof of the insured's death, we will pay the insured's beneficiary the face amount. We will add to the face amount the part of any premium paid for the period beyond the policy month in which the insured's death occurs. If death occurs during the grace period of an unpaid premium, an amount equal to one month's premium will be deducted from the proceeds.

Due proof of the insured's death will consist minimally of our company claim form completed by the beneficiary and a certified copy of the death certificate of the insured.

Interest as required by law will be added to the proceeds payable under this policy.

## SUICIDE

In the event of the suicide of the insured, while sane or insane, within two years from the date of issue, our liability will be limited to the premiums paid.

## INCONTESTABILITY

Except for nonpayment of premiums, we will not contest this policy after it has been in force during the lifetime of the insured for two years from the date of issue.

We will not contest a reinstatement after the reinstatement has been in force during the lifetime of the insured for two years from the date of reinstatement. If we contest a reinstatement, we will contest only statements made in the reinstatement application.

## PREMIUM PAYMENT

The first premium is due on the date of issue and is payable at our home office or to an authorized agent. Insurance will not take effect before this premium is paid. Later premiums are due and payable at the intervals and for the period shown on page 3, while the insured is alive. Later premiums may be sent to our home office or given to an authorized agent in exchange for a receipt signed by one of our officers. With our consent, premiums may be paid at other intervals.

Any premium, after the first, not paid on or before its due date will be in default. Such due date will be the date of default.

## GRACE PERIOD

A 31 day grace period, without interest charge, is allowed for the payment of each premium after the first. This policy will stay in force during this period. If the premium is not paid before the end of the grace period, insurance will end and this policy will lapse.

## REINSTATEMENT

If this policy lapses, it may be reinstated within five years after the date of default. We will require the insured to submit evidence of insurability which is satisfactory to us.

Reinstatement will also be subject to payment of the premium for the grace period with interest at the rate of 6% per year compounded annually plus the premium due for the current policy month.

**RIGHT TO CHANGE PREMIUM**

We reserve the right to change the premium for this policy on the policy anniversary specified on page 3 and on any later policy anniversary, subject to the following terms:

1. The premium will not exceed the applicable maximum premium shown on page 4.

2. Any change in premium will apply to all insureds with the same benefits and provisions who have the same date of issue, age at issue, sex and underwriting class. We will not change the premium because of a change in an insured's health, occupation or avocation.

3. Any change in premium will take effect only after 30 days' prior notice to the owner of this policy.

4. Any change in premium will be based on changes in our expectations of future investment earnings, mortality, persistency, administrative and maintenance expenses, premium taxes, corporate income taxes or interest rates. We will not recoup prior losses, if any, nor distribute prior gains, by changing the premium.

5. Any change in premium will be determined in accordance with procedures and standards on file with the Insurance Department.

This provision does not apply to any rider attached to this policy.

**NEW POLICY OPTION**

This option is available by written request at any time during the period specified on page 3.

We will make a permanent individual life policy available for exchange. This policy may be exchanged for such policy on the insured if no premium is in default and the insured does not qualify for waiver of premium benefits under this policy. We will not require the insured to submit evidence of insurability. The date of exchange will be the date requested by the owner.

The new policy will be issued as of the date of exchange based on the insured's age on that date and the premium rate then in use. The face amount of the new policy may not exceed the face amount of this policy on the date of exchange. The insured's underwriting class will be based on the underwriting class of this policy. The suicide and contestable periods of the new policy will be measured from the date of issue of this policy.

Any benefits or riders in force under this policy on the date of exchange and available for use with the new policy will be included in the new policy and will be subject to our then current rules and rates. Any rider not in force under this policy may be included in the new policy only with our consent.

**RENEWAL OPTION**

This policy may be renewed without evidence of insurability on each expiry date for an additional renewal term period. Renewal premiums are shown on page 4.

The first premium for a new term will be due at the end of the previous term. This policy will renew if this premium is paid within the grace period. Premiums for the new term will be due and payable at the intervals shown on page 3.

No term period will extend beyond the final expiry date shown on page 3.

**RE-ENTRY OPTION**

This option is available only on the date of exchange specified on page 3. We agree to exchange this policy for a new renewable level term policy on the life of the insured. We will require evidence of insurability satisfactory to us. Such evidence will be paid for by us and will be based on our then current underwriting rules.

Exchange will be subject to the following terms:

1.   A properly completed application must be submitted to us within 60 days prior to the date of exchange, along with payment of the first premium for the new policy.

2.   This policy must be in full force and all premiums due prior to the date of exchange must be paid. Insurance under this policy will cease when this policy is exchanged.

3.   The age at issue for the new policy will be the age of the insured on the date of exchange.

4.   The new policy will be on the same plan of insurance as this policy. Alternatively, the owner may elect any other plan with a shorter renewable term period then being issued on this policy form. The date of issue of the new policy will be the date of exchange. The face amount of the new policy may not exceed the face amount of this policy and must meet or exceed the minimum then in effect for the plan elected.

5.   Any benefits or riders in force under this policy on the date of exchange will be included in the new policy and will be subject to our then current rules and rates.

6.   The new policy will not have a suicide provision.

7.   The contestable period of the new policy will start on the date of exchange, with respect to the evidence of insurability used to qualify the insured for the new policy. However, we may contest only the difference between the face amount of the new policy and the face amount that the premium for the new policy, excluding the premium for any riders, would have purchased on the date of exchange had this policy remained in force.

8.   The premium rates for the new policy will be our then current rates applicable to a new purchase of the plan elected.

**NONPARTICIPATING**

This policy does not pay dividends.

**OWNER**

The owner is as shown in the application unless changed. The owner has all rights under this policy while the insured is alive. These rights are subject to the consent of any living irrevocable beneficiary.

**BENEFICIARY**

The beneficiary or beneficiaries are as shown in the application unless changed. If no beneficiary survives the insured, the owner or the estate of the owner will be the beneficiary. However, if a trust is the owner and no beneficiary survives the insured, the estate of the insured will be the beneficiary.

**CHANGE OF OWNER OR BENEFICIARY**

While this policy is in force the owner may change the beneficiary or ownership by written notice to us. When we record the change, it will take effect as of the date the owner signed the notice, subject to any payment we make or other action we take before recording.

**CORRESPONDENCE**

Any request, notice or proof shall be filed with our home office.

**ASSIGNMENT**

No assignment of this policy will be binding on us until filed with us in writing and recorded by us. No assignment will affect any payment we made before we recorded the assignment. We will not be responsible for the validity of an assignment.

All rights of the owner and any revocable beneficiary are subject to the rights of any assignee on record with us.

**POLICY SETTLEMENT**

In any settlement we may require the return of this policy.

**THE CONTRACT**

The entire contract consists of this policy, any riders and endorsements, the attached copy of the original application and any amendments or supplemental applications.

All statements in an application are representations and not warranties. No statement will be used to void this policy or to contest a claim unless it appears in an application or amendment which is attached to and made part of this policy.

This policy may not be changed, nor may any of our rights or requirements be waived, except in writing by one of our authorized officers.

**MISSTATEMENT OF AGE OR SEX**

If the insured's age or sex has been misstated, any death benefit payable by us will be what the premiums paid would have bought at the insured's correct age and sex.

**CLAIMS OF CREDITORS**

All payments under this policy are exempt from the claims of creditors to the extent permitted by law. Payments may not be assigned or withdrawn without our consent before becoming payable.

**PAYMENT OPTIONS**

Proceeds of less than $5,000 will be paid in one lump sum. Proceeds of $5,000 or more may be paid under an option. When proceeds are placed under an option the payee will receive a settlement contract. The date of the contract will be the date the proceeds become payable. The owner may choose the option only while the insured is living. After the death of the insured, the beneficiary may choose the option if proceeds are payable in one sum. Payment options for death proceeds must be chosen within six months after the insured's death. Payment options for other proceeds must be chosen within two months of the date they are payable. All elections must be filed with us in writing. Payments may be requested at 1, 3, 6 or 12 month intervals. Each payment must be at least $50. Each payee must be a living person receiving payments in his own right.

The interest rate for options 1, 2 and 3 will be declared by us each year. This rate will never be less than 3% per year. For options 1 and 3 any interest in excess of 3% will be used to increase payment amounts; for option 2 any excess interest will be used to lengthen the payment period.

For options 4, 5, 6 and 7 the payments will be based on rates declared by us from time to time. These rates will be 3 1/2% less than the published rates in effect for immediate annuities on the date of the settlement contract. Payments under these rates will never be less than the amount according to the tables of minimum monthly income on pages 8B, 8C and 8D. The rates in the tables are derived from a projection of the 1983 Table "a", and an annual interest rate of 3.00%.

**Option 1. Interest.** We will hold the proceeds on deposit. Interest will be paid while the payee is living. Sums of $500 or more may be withdrawn up to four times a year.

**Option 2. Specified Income.** We will pay a stated income amount until the proceeds, with interest on the unpaid balance, are used up. The income each year may not be less than 10% of the proceeds.

**Option 3. Income for Specified Period.** We will pay an income for a stated period, up to 30 years.

**Option 4. Life Income with Guaranteed Period.** We will pay an income for a guaranteed period and for the rest of the payee's life. The guaranteed period may be 10, 15 or 20 years.

**Option 5. Life Income without Guaranteed Period.** We will pay an income for the payee's lifetime. Payments will end at the death of the payee. However, if the payee dies within one year of the date of the settlement contract, payments will be continued to a contingent payee until 10 years from the date of the settlement contract.

**Option 6. Life Income with Installment Refund.** We will pay an income for a guaranteed period and for the rest of the payee's life. The guaranteed period is the period required for the sum of income payments to equal the proceeds applied.

**Option 7. Joint Life Income with 2/3 to Survivor.** We will pay an income while both payees are living. When one payee dies we will pay 2/3 of the income for the rest of the survivor's life. However, if one payee dies within one year from the date of the settlement contract, income will be paid to the survivor thereafter as if the survivor had chosen option 5 on the date of the settlement contract.

**Additional Option to Buy Single Premium Immediate Life Annuity at Reduced Rate.** If proceeds of at least $5,000 are applied under option 4, 5, 6 or 7, additional money may be used to buy a single premium immediate life annuity. The cost of this annuity will be 3 1/2% less than the then published rate. The monthly income from this annuity together with the monthly income from option 4, 5, 6 or 7 may not exceed 3 times the monthly income which could be bought solely by applying the policy proceeds. Written request must be made within 31 days from the date proceeds are payable.

**Payment Provisions.** The first payment under options 2, 3, 4, 5, 6 or 7 will be due as of the date of the settlement contract. The first payment under option 1 will be due at the end of the first interest period. If any payments remain under an option at the death of the payee, or at the death of the surviving payee in regard to option 7, the amount stated below will be paid in one sum to the payee's executors or administrators, unless otherwise directed in the election of the option:

**Option 1.** Any amount left on deposit with accrued interest.

**Option 2.** The unpaid balance of proceeds with accrued interest.

**Option 3.** The commuted value, based on interest at 3% per year, of any future income payments for the stated guaranteed period.

**Options 4, 5, 6 or 7.** The commuted value of any future income payments for the stated guaranteed period, based on interest as follows:

1. if payments are made according to the tables of minimum monthly income on pages 8B, 8C and 8D, 3% per year; or

2. if payments are based on the published rates in effect for immediate annuities, the interest rate shown in the settlement contract.

**Evidence of Age and Survival.** We may require due proof of age and continued survival of a payee under options 4, 5, 6 or 7.

**Special Agreements.** Policy proceeds may be paid in any other manner agreed to by us.

## TABLE OF MINIMUM MONTHLY INCOME FOR FEMALE
### UNDER PAYMENT OPTIONS FOR EACH $1,000 OF PROCEEDS

| OPTION 3 INCOME FOR SPECIFIED PERIOD | | AGE AT FIRST PAYMENT | OPTION 4 LIFE INCOME WITH GUARANTEED PERIOD | | | OPTION 5 LIFE INCOME WITHOUT GUARANTEED PERIOD | OPTION 6 LIFE INCOME WITH INSTALLMENT REFUND |
|---|---|---|---|---|---|---|---|
| Year | Income | | 10 Years | 15 Years | 20 Years | | |
| 1 | $84.47 | 5 and under | $2.72 | $2.72 | $2.72 | $2.72 | $2.79 |
| 2 | 42.86 | 6 | 2.73 | 2.73 | 2.73 | 2.73 | 2.79 |
| 3 | 28.99 | 7 | 2.74 | 2.74 | 2.74 | 2.74 | 2.79 |
| 4 | 22.06 | 8 | 2.75 | 2.75 | 2.75 | 2.75 | 2.79 |
| 5 | 17.91 | 9 | 2.76 | 2.76 | 2.76 | 2.76 | 2.79 |
| 6 | 15.14 | 10 | 2.77 | 2.77 | 2.77 | 2.77 | 2.79 |
| 7 | 13.16 | 11 | 2.78 | 2.78 | 2.78 | 2.78 | 2.79 |
| 8 | 11.68 | 12 | 2.79 | 2.79 | 2.79 | 2.79 | 2.79 |
| 9 | 10.53 | 13 | 2.80 | 2.80 | 2.80 | 2.80 | 2.80 |
| 10 | 9.61 | 14 | 2.81 | 2.81 | 2.81 | 2.81 | 2.81 |
| 11 | 8.86 | 15 | 2.82 | 2.82 | 2.82 | 2.82 | 2.82 |
| 12 | 8.24 | 16 | 2.83 | 2.83 | 2.83 | 2.83 | 2.83 |
| 13 | 7.71 | 17 | 2.85 | 2.85 | 2.84 | 2.85 | 2.84 |
| 14 | 7.26 | 18 | 2.86 | 2.86 | 2.86 | 2.86 | 2.86 |
| 15 | 6.87 | 19 | 2.87 | 2.87 | 2.87 | 2.87 | 2.87 |
| 16 | 6.53 | 20 | 2.89 | 2.89 | 2.89 | 2.89 | 2.88 |
| 17 | 6.23 | 21 | 2.90 | 2.90 | 2.90 | 2.90 | 2.90 |
| 18 | 5.96 | 22 | 2.92 | 2.92 | 2.92 | 2.92 | 2.91 |
| 19 | 5.73 | 23 | 2.93 | 2.93 | 2.93 | 2.93 | 2.93 |
| 20 | 5.51 | 24 | 2.95 | 2.95 | 2.95 | 2.95 | 2.95 |
| 21 | 5.32 | 25 | 2.97 | 2.97 | 2.96 | 2.97 | 2.96 |
| 22 | 5.15 | 26 | 2.98 | 2.98 | 2.98 | 2.98 | 2.98 |
| 23 | 4.99 | 27 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 |
| 24 | 4.84 | 28 | 3.02 | 3.02 | 3.02 | 3.02 | 3.02 |
| 25 | 4.71 | 29 | 3.04 | 3.04 | 3.04 | 3.04 | 3.04 |
| 26 | 4.59 | 30 | 3.06 | 3.06 | 3.06 | 3.06 | 3.06 |
| 27 | 4.48 | 31 | 3.09 | 3.08 | 3.08 | 3.09 | 3.08 |
| 28 | 4.37 | 32 | 3.11 | 3.11 | 3.11 | 3.11 | 3.10 |
| 29 | 4.27 | 33 | 3.13 | 3.13 | 3.13 | 3.13 | 3.13 |
| 30 | 4.18 | 34 | 3.16 | 3.16 | 3.15 | 3.16 | 3.15 |
| | | 35 | 3.18 | 3.18 | 3.18 | 3.18 | 3.18 |
| | | 36 | 3.21 | 3.21 | 3.21 | 3.21 | 3.20 |
| | | 37 | 3.24 | 3.24 | 3.24 | 3.24 | 3.23 |
| | | 38 | 3.27 | 3.27 | 3.27 | 3.27 | 3.26 |
| | | 39 | 3.30 | 3.30 | 3.30 | 3.30 | 3.29 |
| | | 40 | 3.34 | 3.33 | 3.33 | 3.34 | 3.32 |
| | | 41 | 3.37 | 3.37 | 3.36 | 3.37 | 3.35 |
| | | 42 | 3.41 | 3.40 | 3.40 | 3.41 | 3.39 |
| | | 43 | 3.44 | 3.44 | 3.43 | 3.45 | 3.42 |
| | | 44 | 3.49 | 3.48 | 3.47 | 3.49 | 3.46 |
| | | 45 | 3.53 | 3.52 | 3.51 | 3.53 | 3.50 |
| | | 46 | 3.57 | 3.57 | 3.55 | 3.58 | 3.54 |
| | | 47 | 3.62 | 3.61 | 3.60 | 3.62 | 3.58 |
| | | 48 | 3.67 | 3.66 | 3.64 | 3.67 | 3.63 |
| | | 49 | 3.72 | 3.71 | 3.69 | 3.73 | 3.68 |
| | | 50 | 3.78 | 3.76 | 3.74 | 3.78 | 3.73 |
| | | 51 | 3.83 | 3.82 | 3.79 | 3.84 | 3.78 |
| | | 52 | 3.90 | 3.88 | 3.85 | 3.90 | 3.83 |
| | | 53 | 3.96 | 3.94 | 3.90 | 3.97 | 3.89 |
| | | 54 | 4.03 | 4.00 | 3.96 | 4.04 | 3.95 |
| | | 55 | 4.10 | 4.07 | 4.02 | 4.12 | 4.02 |
| | | 56 | 4.17 | 4.14 | 4.09 | 4.19 | 4.08 |
| | | 57 | 4.25 | 4.22 | 4.15 | 4.28 | 4.15 |
| | | 58 | 4.34 | 4.29 | 4.22 | 4.36 | 4.23 |
| | | 59 | 4.42 | 4.37 | 4.29 | 4.46 | 4.30 |
| | | 60 | 4.52 | 4.46 | 4.36 | 4.56 | 4.39 |
| | | 61 | 4.62 | 4.55 | 4.44 | 4.66 | 4.47 |
| | | 62 | 4.72 | 4.64 | 4.51 | 4.78 | 4.56 |
| | | 63 | 4.84 | 4.74 | 4.59 | 4.90 | 4.66 |
| | | 64 | 4.95 | 4.84 | 4.66 | 5.03 | 4.76 |
| | | 65 | 5.08 | 4.95 | 4.74 | 5.17 | 4.87 |
| | | 66 | 5.21 | 5.06 | 4.81 | 5.31 | 4.98 |
| | | 67 | 5.35 | 5.17 | 4.89 | 5.47 | 5.10 |
| | | 68 | 5.50 | 5.28 | 4.96 | 5.65 | 5.23 |
| | | 69 | 5.66 | 5.40 | 5.03 | 5.83 | 5.36 |
| | | 70 | 5.82 | 5.52 | 5.09 | 6.03 | 5.51 |
| | | 71 | 6.00 | 5.64 | 5.15 | 6.25 | 5.66 |
| | | 72 | 6.18 | 5.75 | 5.21 | 6.49 | 5.82 |
| | | 73 | 6.37 | 5.87 | 5.26 | 6.74 | 5.99 |
| | | 74 | 6.56 | 5.98 | 5.30 | 7.02 | 6.17 |
| | | 75 | 6.76 | 6.09 | 5.34 | 7.33 | 6.37 |
| | | 76 | 6.97 | 6.19 | 5.38 | 7.65 | 6.57 |
| | | 77 | 7.17 | 6.29 | 5.41 | 8.01 | 6.78 |
| | | 78 | 7.39 | 6.38 | 5.43 | 8.40 | 7.02 |
| | | 79 | 7.59 | 6.46 | 5.46 | 8.82 | 7.26 |
| | | 80 | 7.79 | 6.53 | 5.47 | 9.28 | 7.52 |
| | | 81 and over | 7.99 | 6.59 | 5.49 | 9.78 | 7.79 |

MINIMUM INCOME AMOUNTS PAYABLE OTHER THAN MONTHLY WILL BE FURNISHED ON REQUEST.

### TABLE OF MINIMUM MONTHLY INCOME FOR MALE
### UNDER PAYMENT OPTIONS FOR EACH $1,000 OF PROCEEDS

| OPTION 3 INCOME FOR SPECIFIED PERIOD | | AGE AT FIRST PAYMENT | OPTION 4 LIFE INCOME WITH GUARANTEED PERIOD | | | OPTION 5 LIFE INCOME WITHOUT GUARANTEED PERIOD | OPTION 6 LIFE INCOME WITH INSTALLMENT REFUND |
|---|---|---|---|---|---|---|---|
| Year | Income | | 10 Years | 15 Years | 20 Years | | |
| 1 | $84.47 | 5 and under | $2.78 | $2.78 | $2.78 | $2.78 | $2.79 |
| 2 | 42.86 | 6 | 2.79 | 2.79 | 2.79 | 2.79 | 2.79 |
| 3 | 28.99 | 7 | 2.80 | 2.80 | 2.80 | 2.80 | 2.80 |
| 4 | 22.06 | 8 | 2.81 | 2.81 | 2.81 | 2.81 | 2.81 |
| 5 | 17.91 | 9 | 2.82 | 2.82 | 2.82 | 2.82 | 2.82 |
| 6 | 15.14 | 10 | 2.84 | 2.84 | 2.83 | 2.84 | 2.83 |
| 7 | 13.16 | 11 | 2.85 | 2.85 | 2.85 | 2.85 | 2.84 |
| 8 | 11.68 | 12 | 2.86 | 2.86 | 2.86 | 2.86 | 2.86 |
| 9 | 10.53 | 13 | 2.87 | 2.87 | 2.87 | 2.88 | 2.87 |
| 10 | 9.61 | 14 | 2.89 | 2.89 | 2.89 | 2.89 | 2.88 |
| 11 | 8.86 | 15 | 2.90 | 2.90 | 2.90 | 2.90 | 2.90 |
| 12 | 8.24 | 16 | 2.92 | 2.92 | 2.91 | 2.92 | 2.91 |
| 13 | 7.71 | 17 | 2.93 | 2.93 | 2.93 | 2.93 | 2.93 |
| 14 | 7.26 | 18 | 2.95 | 2.95 | 2.95 | 2.95 | 2.94 |
| 15 | 6.87 | 19 | 2.97 | 2.96 | 2.96 | 2.97 | 2.96 |
| 16 | 6.53 | 20 | 2.98 | 2.98 | 2.98 | 2.98 | 2.97 |
| 17 | 6.23 | 21 | 3.00 | 3.00 | 3.00 | 3.00 | 2.99 |
| 18 | 5.96 | 22 | 3.02 | 3.02 | 3.02 | 3.02 | 3.01 |
| 19 | 5.73 | 23 | 3.04 | 3.04 | 3.03 | 3.04 | 3.03 |
| 20 | 5.51 | 24 | 3.06 | 3.06 | 3.06 | 3.06 | 3.05 |
| 21 | 5.32 | 25 | 3.08 | 3.08 | 3.08 | 3.08 | 3.07 |
| 22 | 5.15 | 26 | 3.10 | 3.10 | 3.10 | 3.10 | 3.09 |
| 23 | 4.99 | 27 | 3.13 | 3.12 | 3.12 | 3.13 | 3.11 |
| 24 | 4.84 | 28 | 3.15 | 3.15 | 3.14 | 3.15 | 3.14 |
| 25 | 4.71 | 29 | 3.18 | 3.17 | 3.17 | 3.18 | 3.16 |
| 26 | 4.59 | 30 | 3.20 | 3.20 | 3.19 | 3.20 | 3.19 |
| 27 | 4.48 | 31 | 3.23 | 3.23 | 3.22 | 3.23 | 3.21 |
| 28 | 4.37 | 32 | 3.26 | 3.26 | 3.25 | 3.26 | 3.24 |
| 29 | 4.27 | 33 | 3.29 | 3.29 | 3.28 | 3.29 | 3.27 |
| 30 | 4.18 | 34 | 3.32 | 3.32 | 3.31 | 3.32 | 3.30 |
| | | 35 | 3.35 | 3.35 | 3.34 | 3.36 | 3.33 |
| | | 36 | 3.39 | 3.38 | 3.37 | 3.39 | 3.36 |
| | | 37 | 3.43 | 3.42 | 3.41 | 3.43 | 3.39 |
| | | 38 | 3.46 | 3.46 | 3.44 | 3.47 | 3.43 |
| | | 39 | 3.50 | 3.50 | 3.48 | 3.51 | 3.47 |
| | | 40 | 3.55 | 3.54 | 3.52 | 3.55 | 3.50 |
| | | 41 | 3.59 | 3.58 | 3.56 | 3.60 | 3.54 |
| | | 42 | 3.64 | 3.62 | 3.60 | 3.64 | 3.58 |
| | | 43 | 3.68 | 3.67 | 3.65 | 3.69 | 3.63 |
| | | 44 | 3.74 | 3.72 | 3.69 | 3.75 | 3.67 |
| | | 45 | 3.79 | 3.77 | 3.74 | 3.80 | 3.72 |
| | | 46 | 3.84 | 3.82 | 3.79 | 3.86 | 3.77 |
| | | 47 | 3.90 | 3.88 | 3.84 | 3.92 | 3.82 |
| | | 48 | 3.97 | 3.94 | 3.89 | 3.99 | 3.88 |
| | | 49 | 4.03 | 4.00 | 3.95 | 4.05 | 3.93 |
| | | 50 | 4.10 | 4.06 | 4.00 | 4.12 | 3.99 |
| | | 51 | 4.17 | 4.13 | 4.06 | 4.20 | 4.06 |
| | | 52 | 4.24 | 4.20 | 4.12 | 4.28 | 4.12 |
| | | 53 | 4.32 | 4.27 | 4.19 | 4.36 | 4.19 |
| | | 54 | 4.41 | 4.35 | 4.25 | 4.45 | 4.26 |
| | | 55 | 4.49 | 4.42 | 4.32 | 4.55 | 4.33 |
| | | 56 | 4.59 | 4.51 | 4.38 | 4.64 | 4.41 |
| | | 57 | 4.68 | 4.59 | 4.45 | 4.75 | 4.50 |
| | | 58 | 4.79 | 4.68 | 4.52 | 4.86 | 4.58 |
| | | 59 | 4.89 | 4.77 | 4.59 | 4.98 | 4.68 |
| | | 60 | 5.01 | 4.87 | 4.66 | 5.11 | 4.77 |
| | | 61 | 5.13 | 4.97 | 4.73 | 5.25 | 4.87 |
| | | 62 | 5.25 | 5.07 | 4.80 | 5.39 | 4.98 |
| | | 63 | 5.39 | 5.17 | 4.86 | 5.55 | 5.09 |
| | | 64 | 5.53 | 5.27 | 4.93 | 5.72 | 5.21 |
| | | 65 | 5.67 | 5.38 | 4.99 | 5.90 | 5.34 |
| | | 66 | 5.83 | 5.49 | 5.05 | 6.09 | 5.47 |
| | | 67 | 5.98 | 5.60 | 5.11 | 6.30 | 5.61 |
| | | 68 | 6.15 | 5.70 | 5.17 | 6.52 | 5.76 |
| | | 69 | 6.32 | 5.81 | 5.21 | 6.76 | 5.91 |
| | | 70 | 6.50 | 5.91 | 5.26 | 7.02 | 6.08 |
| | | 71 | 6.68 | 6.01 | 5.30 | 7.29 | 6.25 |
| | | 72 | 6.86 | 6.11 | 5.34 | 7.59 | 6.43 |
| | | 73 | 7.05 | 6.20 | 5.37 | 7.91 | 6.62 |
| | | 74 | 7.24 | 6.29 | 5.40 | 8.24 | 6.82 |
| | | 75 | 7.42 | 6.37 | 5.42 | 8.61 | 7.04 |
| | | 76 | 7.61 | 6.44 | 5.44 | 9.01 | 7.26 |
| | | 77 | 7.79 | 6.51 | 5.46 | 9.43 | 7.49 |
| | | 78 | 7.97 | 6.57 | 5.48 | 9.89 | 7.74 |
| | | 79 | 8.14 | 6.62 | 5.49 | 10.38 | 7.99 |
| | | 80 | 8.30 | 6.67 | 5.50 | 10.91 | 8.27 |
| | | 81 and over | 8.45 | 6.71 | 5.51 | 11.47 | 8.55 |

MINIMUM INCOME AMOUNTS PAYABLE OTHER THAN MONTHLY WILL BE FURNISHED ON REQUEST.

PO3-M 8C

TABLE OF MINIMUM MONTHLY INCOME UNDER PAYMENT OPTIONS FOR EACH $1,000 OF PROCEEDS

## OPTION 7 - JOINT LIFE INCOME WITH TWO THIRDS TO SURVIVOR

| Female | 40 | 45 | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
|--------|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| **Male** | | | | | | | | | |
| 40 | $3.35 | $3.45 | $3.55 | $3.67 | $3.80 | $3.94 | $4.10 | $4.28 | $4.47 |
| 41 | 3.37 | 3.47 | 3.58 | 3.70 | 3.83 | 3.97 | 4.14 | 4.32 | 4.51 |
| 42 | 3.39 | 3.49 | 3.60 | 3.72 | 3.86 | 4.01 | 4.18 | 4.37 | 4.56 |
| 43 | 3.41 | 3.51 | 3.62 | 3.75 | 3.89 | 4.05 | 4.22 | 4.41 | 4.61 |
| 44 | 3.42 | 3.53 | 3.65 | 3.78 | 3.92 | 4.08 | 4.26 | 4.46 | 4.67 |
| 45 | 3.44 | 3.55 | 3.67 | 3.81 | 3.96 | 4.12 | 4.31 | 4.51 | 4.72 |
| 46 | 3.46 | 3.57 | 3.70 | 3.84 | 3.99 | 4.16 | 4.35 | 4.56 | 4.78 |
| 47 | 3.48 | 3.59 | 3.72 | 3.87 | 4.03 | 4.20 | 4.40 | 4.61 | 4.84 |
| 48 | 3.50 | 3.62 | 3.75 | 3.90 | 4.07 | 4.25 | 4.45 | 4.67 | 4.90 |
| 49 | 3.52 | 3.64 | 3.78 | 3.93 | 4.10 | 4.29 | 4.50 | 4.73 | 4.97 |
| 50 | 3.54 | 3.66 | 3.80 | 3.96 | 4.14 | 4.34 | 4.55 | 4.79 | 5.04 |
| 51 | 3.56 | 3.69 | 3.83 | 4.00 | 4.18 | 4.38 | 4.61 | 4.85 | 5.11 |
| 52 | 3.58 | 3.71 | 3.86 | 4.03 | 4.22 | 4.43 | 4.66 | 4.92 | 5.19 |
| 53 | 3.60 | 3.73 | 3.89 | 4.07 | 4.26 | 4.48 | 4.72 | 4.99 | 5.27 |
| 54 | 3.62 | 3.76 | 3.92 | 4.10 | 4.31 | 4.53 | 4.78 | 5.06 | 5.35 |
| 55 | 3.65 | 3.78 | 3.95 | 4.14 | 4.35 | 4.59 | 4.85 | 5.13 | 5.43 |
| 56 | 3.67 | 3.81 | 3.98 | 4.17 | 4.39 | 4.64 | 4.91 | 5.21 | 5.52 |
| 57 | 3.69 | 3.84 | 4.01 | 4.21 | 4.44 | 4.69 | 4.98 | 5.29 | 5.62 |
| 58 | 3.72 | 3.86 | 4.04 | 4.24 | 4.48 | 4.75 | 5.05 | 5.37 | 5.72 |
| 59 | 3.74 | 3.89 | 4.07 | 4.28 | 4.53 | 4.81 | 5.12 | 5.46 | 5.82 |
| 60 | 3.76 | 3.92 | 4.10 | 4.32 | 4.58 | 4.87 | 5.19 | 5.55 | 5.93 |
| 61 | 3.79 | 3.95 | 4.13 | 4.36 | 4.62 | 4.93 | 5.27 | 5.64 | 6.04 |
| 62 | 3.82 | 3.97 | 4.17 | 4.40 | 4.67 | 4.99 | 5.34 | 5.74 | 6.16 |
| 63 | 3.84 | 4.00 | 4.20 | 4.44 | 4.72 | 5.05 | 5.42 | 5.84 | 6.28 |
| 64 | 3.87 | 4.03 | 4.24 | 4.48 | 4.77 | 5.11 | 5.51 | 5.94 | 6.41 |
| 65 | 3.90 | 4.06 | 4.27 | 4.52 | 4.82 | 5.18 | 5.59 | 6.05 | 6.54 |
| 66 | 3.92 | 4.10 | 4.31 | 4.57 | 4.88 | 5.25 | 5.68 | 6.16 | 6.68 |
| 67 | 3.95 | 4.13 | 4.34 | 4.61 | 4.93 | 5.31 | 5.76 | 6.28 | 6.83 |
| 68 | 3.98 | 4.16 | 4.38 | 4.65 | 4.98 | 5.38 | 5.85 | 6.39 | 6.98 |
| 69 | 4.01 | 4.19 | 4.42 | 4.70 | 5.04 | 5.45 | 5.94 | 6.51 | 7.13 |
| 70 | 4.04 | 4.23 | 4.45 | 4.74 | 5.09 | 5.52 | 6.03 | 6.63 | 7.29 |
| 71 | 4.07 | 4.26 | 4.49 | 4.78 | 5.14 | 5.59 | 6.12 | 6.76 | 7.45 |
| 72 | 4.10 | 4.29 | 4.53 | 4.83 | 5.20 | 5.66 | 6.22 | 6.88 | 7.62 |
| 73 | 4.13 | 4.33 | 4.57 | 4.87 | 5.25 | 5.73 | 6.31 | 7.01 | 7.80 |
| 74 | 4.16 | 4.36 | 4.61 | 4.92 | 5.31 | 5.80 | 6.40 | 7.14 | 7.97 |
| 75 | 4.19 | 4.39 | 4.65 | 4.96 | 5.36 | 5.87 | 6.50 | 7.27 | 8.15 |
| 76 | 4.22 | 4.43 | 4.68 | 5.01 | 5.42 | 5.94 | 6.59 | 7.40 | 8.33 |
| 77 | 4.25 | 4.46 | 4.72 | 5.05 | 5.47 | 6.00 | 6.68 | 7.53 | 8.52 |
| 78 | 4.28 | 4.49 | 4.76 | 5.10 | 5.52 | 6.07 | 6.77 | 7.66 | 8.71 |
| 79 | 4.31 | 4.53 | 4.80 | 5.14 | 5.58 | 6.14 | 6.87 | 7.79 | 8.89 |
| 80 | 4.34 | 4.56 | 4.83 | 5.18 | 5.63 | 6.21 | 6.96 | 7.92 | 9.08 |

MINIMUM INCOME AMOUNTS FOR AGES NOT SHOWN AND MINIMUM INCOME AMOUNTS
PAYABLE OTHER THAN MONTHLY WILL BE FURNISHED ON REQUEST.

## AMERICAN GENERAL LIFE INSURANCE COMPANY

### TERMINAL ILLNESS ACCELERATED BENEFIT RIDER

**NOTICE: Benefits advanced under this Rider may or may not be taxable. As with all tax matters, the Owner should consult a personal tax advisor to assess the impact of this benefit.**

This rider has been added to and made a part of the policy to which it is attached.

**Right to Examine Rider.** You may return this rider within 20 days after receipt if you are not satisfied with it for any reason. The rider may be returned to us or to the agent through whom the policy was purchased. Upon return of this rider within the 20 day period, it will be void from the beginning.

**Terminal Illness Benefit: Accelerated Payment of a Portion of the Base Policy Death Benefit.** This is an accelerated death benefit rider. This rider provides for acceleration of payment of a portion of the base policy death benefit proceeds upon receipt of satisfactory evidence that the Insured under the base policy is terminally ill with 12 months or less to live.

**Entitlement to an Accelerated Benefit Under This Rider.** The benefit under this rider is payable to the Owner of the policy if:

1. The amount payable is $2,500 or more;
2. The Owner elects to exercise the option while the policy and this rider are in force;
3. The Owner provides a written statement signed by a physician providing the following information:
   a. The diagnosis; and
   b. A statement that:
      (1) The medical condition of the Insured is expected to result in death; and
      (2) Because of the nature and severity of the medical condition, the Insured's life expectancy is not greater than 12 months;
4. The Owner provides consent of any irrevocable beneficiary or assignee that benefits may be paid to the Owner;
5. The Owner provides, if requested by us, a consent form from any of the following:
   a. A spouse;
   b. The insured under this rider;
   c. Any beneficiary (other than as stated in paragraph 4); or
   d. Any other person if, in our discretion, such person's consent is needed to protect our interests;

6. Our right to a second opinion by a physician of our choice has been exercised or waived.

Payment of a benefit under this rider will be made only once at which time this rider will terminate. (For example, if after a benefit has been paid under this rider, the Insured recovers from a condition which was considered "terminal", and the Insured is again diagnosed as having a terminal illness, no additional benefit will be payable.)

**Limitations.** No benefit will be provided by this rider if terminal illness results from intentionally self-inflicted injuries.

This rider provides for the advance of a portion of the death benefit proceeds of the base policy. This is not meant to cause involuntarily access to proceeds ultimately payable to the beneficiary. Therefore, this benefit is not available:

1. If either the Owner or the Insured under this rider is required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or
2. If either the Owner or the Insured under this rider is required by a government agency to use this benefit in order to apply for, obtain, or otherwise keep a government benefit or entitlement.

**Terminal Illness Accelerated Benefit Insured.** Only the Insured under the base policy is covered by this rider. No coverage is provided for the spouse, any children, or any other person covered by riders attached to the base policy.

**Terminal Illness Benefit Amount.** The Terminal Illness Benefit is a one time acceleration of up to 50% of the death benefit proceeds payable under the base policy, not to exceed $250,000.

The amount of coverage under this rider will change automatically with any change in the base policy benefit amount (subject to the $250,000 maximum). No accelerated benefit will be payable on the basis of any other rider attached to the policy.

91401-A

**Deferred Premiums.** After payment of the Terminal Illness Benefit and if the insured is not eligible for Waiver of Premium (or Waiver of Monthly Deduction), we will defer premiums on the policy and any attached riders. The total of any premiums deferred and interest thereon will be assigned to us and deducted from the death benefit.

The amount of premium deferred on universal life policies containing a "Monthly Guarantee Premium" provision will be equal to the Guarantee Premium necessary to keep the policy in force to the next policy anniversary.    The amount of premium deferred on universal life policies without a Monthly Guarantee Premium Provision will be equal to the sum of Monthly Deductions to the next policy anniversary. (See the policy provision entitled "How we calculate a Monthly Deduction.")

**Lien.** When an accelerated benefit is paid under this rider, a lien against future policy benefits will be established.    The lien at the time the accelerated benefit is paid will be equal to the amount of such benefit; plus:

1. Any deferred premiums; and
2. Loan interest to the next policy anniversary, if due but unpaid (deferred loan interest); and
3. An administrative fee not to exceed $250; and
4. Interest to the next policy anniversary on the amount accelerated.

On each policy anniversary, any premiums, loan interest or interest on the lien that is due but unpaid will be added to the lien. The amount of the lien and any policy loan will be deducted from the Death Benefit prior to payment.

At any time the lien plus any policy loan equals or exceeds the death benefit that would be payable if there were no indebtedness, this policy will lapse. However, at least 31 days prior notice must be mailed by us to your last known address and to the assignee of record, if any.

**Interest.** After payment of the Terminal Illness Benefit, interest will accrue daily on paid out benefits and any deferred premiums at an annual effective interest rate. Interest on the lien will be payable in advance on each policy anniversary. The interest rate will be determined at the end of each calendar year. Such rate will be effective on the policy anniversary occurring in the following calendar year.

The maximum interest rate will not exceed the greater of:

1. The Moody's Corporate Bond Yield Average-Monthly Average Corporates (hereafter referred to as "Moody's Bond Yield Average") for the month of October preceding the calendar year for which the loan interest rate is determined; or
2. The interest rate used to calculate Cash Values under the policy during the period for which the interest rate is being determined, plus 1%.

If the Moody's Bond Yield Average is no longer published, the rate used in its place will be established by law or regulation of the insurance supervisory official of the jurisdiction in which the policy is delivered.    Any change in the interest rate will be subject to the following:

1. No change in the interest rate will be made unless the difference in rates is 1/2% or more.
2. If the difference is 1/2% or more and the legal maximum interest rate is lower, we will lower the interest rate to be equal to or less than the legal maximum interest rate.
3. If the difference is 1/2% or more and the legal maximum interest rate is higher, we may increase the interest rate by at least 1/2% but not more than the legal maximum interest rate.

We will notify the Owner of the initial interest rate. If there is a benefit that has been paid on this policy, we will give the Owner advance notice of any increase in the interest rate.

**After the Terminal Illness Benefit is Paid: Effect on this Rider and the Base Policy.** After the Terminal Illness Benefit is paid, this rider will terminate.    A lien will be established against future benefits payable under the base policy. There will be no reduction or lien against any term or accidental death benefit riders attached to the base policy. The cash surrender value available for withdrawal, surrender or loan will be only that amount in excess of the lien plus any policy loan plus any unpaid interest due. Once the lien has been established, it cannot be repaid except through policy surrender, maturity or as a death claim.

Payment of the Terminal Illness Benefit does not cause premiums or monthly deductions to be waived. Any waiver benefit will be considered only if a rider providing waiver benefits is attached to the policy and the Insured qualifies for waiver benefits on the basis of the provisions of such rider.

**Termination.** This rider will terminate on the earliest of the following dates:

1. On the date the base policy terminates for any reason;

2. On the date a benefit under this rider is paid;

3. Upon written request from the Owner that this rider be terminated.

**Physician.** Physician means an individual who is licensed to practice medicine and treat illness or injury in the state in which treatment is received and who is acting within the scope of that license. Physician does not include:

1. The Insured under this rider;

2. The Owner;

3. A person who lives· with the Owner or the Insured under this rider;

4. A person who is a member of the immediate family of the Owner or the Insured under this rider.

**Immediate Family.** The term "Immediate Family" means a spouse, child, brother, sister, parent or grandparent of:

1. The Owner or the Insured under this rider; or

2. A spouse of the Owner or the Insured under this rider.

**Terminal Illness.** Terminal Illness is a non-correctable medical condition that:

1. With reasonable medical certainty, will result in the death of the Insured under this rider in 12 months or less from the date of a licensed physician's certification of such Insured's life expectancy; and

2. Was first diagnosed on or after the Effective Date of this Rider.

**Proof of Terminal Illness.** Before payment of an accelerated benefit, we will require you provide us with proof satisfactory to us that the Rider Insured's life expectancy is 12 months or less

from the date of application for the accelerated benefit. This proof will include the certification of a licensed physician. We reserve the right to obtain a second medical opinion at our expense, and to rely on such opinion if it differs.

**Reinstatement.** If the policy and this rider terminate at the same time, and the policy is reinstated, this rider will also be reinstated, subject to evidence of insurability satisfactory to the Company.

**Notice of Claim.** We must receive written notice of claim within 30 days after the date of diagnosis of the Terminal Illness or as· soon as reasonably possible. The notice must be given to the Home Office. Notice should include the name of the Insured and the policy number.

**Time of Payment of Claims.** After we receive satisfactory written proof of terminal illness, and before the death of the Insured, we will pay the accelerated benefit then due.

**Payment of Claims.** The accelerated benefit will be paid to you. If the Insured dies before payment is made, this rider will terminate with no further value. We will pay the entire death benefit of the policy according to the beneficiary designation in effect at the time of payment.

**Legal Actions.** No legal action may be brought to recover on this rider within 60 days after written proof of terminal illness has been given.

**Policy Provisions Applicable.** This rider is subject to all the conditions and provisions of the policy, except as otherwise provided in this rider.

**Representations and Contestability.** All statements made in the application for this Rider by or on behalf of the Rider Insured will in the absence of fraud be deemed representations and not warranties. The validity of this Rider with respect to the Rider Insured will not be contestable after it has been in force for 2 years during the lifetime of the Rider Insured.

Any increase in coverage effective after the Rider Date of Issue or any reinstatement will not be contestable after such increase or reinstatement has been in force during the lifetime of the Rider Insured for 2 years from its effective date. A contest will be based only on the application for the increase or reinstatement.

**Non-Participating.** No dividends are payable under this rider.

**Consideration.** The consideration for this rider is the application for the policy and this rider, and payment of sufficient premium to keep the base

policy in force. There is no charge for this rider prior to the time application is made for acceleration of payment of a portion of base policy benefits due to terminal illness.

The effective date of this rider is the effective date of the policy unless a later date is shown on page 3 of the policy.

*Matthew E. Winter*

President

## AMERICAN GENERAL LIFE INSURANCE COMPANY

### ENDORSEMENT

This Endorsement has been added to and made a part of the Policy to which it is attached.

The following provision is hereby added to the policy.

**Surrender.** You may surrender your policy at any time. The surrender will be effective on the date we receive all of the necessary requirements, as follows:

1. A written request for surrender must be submitted, which includes:

    (a) The policy number;

    (b) The name of the Insured;

    (c) The signature of the Owner of the policy; and

    (d) The signature of any collateral assignee, irrevocable beneficiary, or other person having an interest in the policy through a legally binding document.

2. The policy must be returned, or, in lieu of the policy, a written statement indicating the policy has been lost or destroyed.

The necessary forms to surrender a policy will be furnished upon request. You may request such forms in writing, or you may call our Policyowners Service Department or your agent.

Upon receipt of the necessary requirements for surrender, we will pay to the Owner any surrender value or other moneys due as quickly as possible. Such payment will be made within 45 days from the date the surrender is effective, unless:

1. A later surrender date is requested by the Owner; or

2. The Company exercises its right, as stated in the policy, to delay payment of any values for a period not exceeding 6 months if such delay is necessary to assure the solvency of the Company.

The effective date of this Endorsement is the Date of Issue of the Policy.

*Matthew E. Winter*

President

L8853

**YME0214554**

 **AMERICAN GENERAL**

**Part A  Life Insurance Application**
**California Version**

RECEIVED

MAY 12 2005

☒ American General Life Insurance Company, Houston, TX
☐ The United States Life Insurance Company in the City of New York, New York, NY

*Member companies of American International Group, Inc.*

In this application, "Company" refers to the insurance company whose name is checked above.

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

| Personal Information |
| --- |

**1. Primary Proposed Insured**

Name __EFREN V. DE CASTRO__    Social Security # __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__    Sex ☒ M ☐ F

Birthplace *(state, country)* __Philippines__    Date of Birth __04-13-54__    Age __51__

Tobacco use  Have you ever used any form of tobacco or nicotine products? ☒ yes ☐ no  If yes, date of last use __1998__

If yes, *type and quantity* of tobacco or nicotine products used __1 pack a day, cigarettes only__

Driver's License No. __D3402410__  State __CA__ U.S.Citizen ☐ yes ☒ no  If no, Date of Entry_____ Visa Type____

Address __1058 WOODMINSTER DR__   City, State __San Jose, CA__    ZIP __95121__

Home Phone __(408) 297-3793__  Work Phone __(408) 271-0300__    E-mail Address __—__

Employer __ATC PARATRANSIT of San Jose__  Occupation __driver__   Length of Employment __2.5 yr__

Employer Address __1535 S 10th St__   City, State __San Jose, CA__    ZIP __95112__

Duties __DRIVER__

Personal Income $ __35,000__    Household Income $ __65,000__   Net Worth $ __400,000__

**2. Other Proposed Insured**

Name _____    Social Security # _____    Sex ☐ M ☒ F

Birthplace *(state, country)*_____    Date of Birth _____    Age____

Relationship to Primary Proposed Insured_____

Tobacco use  Have you ever used any form of tobacco or nicotine products? ☐ yes ☐ no  If yes, date of last use _____

If yes, *type and quantity* of tobacco or nicotine products used _____

Driver's License No. _____  State____  U.S.Citizen ☐ yes ☐ no  If no, Date of Entry_____ Visa Type____

Address _____  City, State _____    ZIP _____

Home Phone (___) _____  Work Phone (___) _____   E-mail Address_____

Employer _____  Occupation_____  Length of Employment _____

Employer Address _____  City, State _____    ZIP _____

Duties _____

Personal Income $ _____  Household Income $ _____   Net Worth $ _____

**3. Child Rider** *(Complete if a proposed insured requests child riders. If more than three children, list information in the Remarks section. Remember to complete Part B, sections 3-7, for all proposed insured children.)*

| Child Name | Sex | Birthplace *(state, country)* | Date of Birth |
| --- | --- | --- | --- |
| _____ | ☐ M ☐ F | _____ | _____ |
| _____ | ☐ M ☐ F | _____ | _____ |
| _____ | ☐ M ☐ F | _____ | _____ |

AGLC100565-CA

Page 1 of 7

## Ownership

**4. Owner** ☒ Primary Proposed Insured ☐ Other Proposed Insured ☐ Trust ☐ Other than a Proposed Insured or Trust
**A. Complete if the proposed insured is not the owner** *(If contingent owner is required, use Remarks section.)*

Name _____  Social Security or Tax ID # _____  Date of Birth _____

Address _____  City, State _____  ZIP _____

Home Phone ( ____ ) _____  Relationship to Primary Proposed Insured _____

**B. Complete if owner is a trust** *(If trustee is premium payor, also complete section 14 D.)*

Exact Name of Trust_____  Trust Tax ID # _____

Current Trustee(s) _____  Date of Trust _____

## Product Information

**5. Product Name** *(If variable, complete appropriate supplement.)*  LTG ultra IS

Amount Applied For: Base Coverage $  250,000  Supplemental Coverage *(If applicable)* $_____
Death Benefit Compliance Test Used *(If applicable)*: ☐ Guideline Premium ☐ Cash Value Accumulation
Automatic Premium Loan *(If applicable)*: ☐ Yes ☐ No
Premium Class Quoted  Class 2, it class 1 → $300,000
Reason for Insurance  mortgage protection

**6. Dividend Options** *(For participating policy only.)*
☐ Cash  ☐ Premium Reduction  ☐ Paid-up Additions  ☐ Deposit Earning Interest  ☐ Other *(Explain)*_____

**7. Death Benefit Options** *(For UL & VUL only.)* ☐ Option 1 - Level  ☐ Option 2 - Increasing  ☐ Option 3 – Level Plus Return of Premium

**8. Riders** ☐ Waiver of Premium  ☐ Waiver of Monthly Deduction  ☐ Waiver of Monthly Guarantee Premium
☐ Maturity Extension Rider – Accumulation Value  ☐ Maturity Extension Rider – Death Benefit  ☐ Terminal Illness Rider

☐ Accidental Death Benefit $_____  ☐ Other Insured $_____  ☐ Child $_____

☐ Spouse $_____  Plan _____  ☐ Other Rider(s) _____

## Beneficiary

**9. Primary** Name SHIRLEY P. DE CASTRO  Relationship wife  % Share 100

Name _____  Relationship _____  % Share _____

**10. Contingent** Name ERAMELISSE DE CASTRO  Relationship daughter  % Share 50

Name PATRICIA A. DE CASTRO  Relationship daughter  % Share 50

**11. Trust Information** Exact Name of Trust_____  Trust Tax ID #_____

Current Trustee(s) _____  Date of Trust_____

**12. Rider Beneficiaries** Spouse Rider _____  Child Rider _____

## Business Coverage

**13. Business Details** *(Complete only if applying for business coverage.)*
Does any proposed insured have an ownership interest in the business? ☐ yes ☐ no
If yes, what is the percentage of ownership for the: Primary Proposed Insured _____  Other Proposed Insured _____
If buy-sell, stock redemption, or key person insurance, will all partners or key people be covered? ☐ yes ☐ no
Describe any special circumstances._____

## Premium

**14. Premium Payment** ☒ Modal $ 51.84  ☐ Single $_____  ☐ Additional Initial $_____

A. Frequency of modal premium: ☐ Annual  ☐ Semi-annual  ☐ Quarterly  ☒ Monthly (Bank draft)
B. Method: ☐ Direct Billing  ☒ Bank Draft *(Complete Bank Draft Authorization.)*  ☐ List Bill: Number _____
☐ Other *(Please explain.)* _____
C. Amount submitted with application $  51.84 _____
D. Premium Payor *(Complete if other than proposed insured.)*

Name _____  Social Security or Tax ID #_____  Home Phone ( ____ )

Address _____  City, State _____  ZIP _____

## Existing Coverage

**15. Other Life Insurance or Annuities**  *(indicate life insurance policies or annuities or annuities in force or pending for the proposed insured(s).)*
Does any proposed insured have any existing or pending annuity or life insurance contracts?  ☐ yes ☒ no
*(If yes, indicate life insurance policies or annuities in force or pending for the proposed insured(s).)*

**Type:  i** = individual, **b** = business, **g** = group, **p** = pending life insurance or annuity

| Name of Proposed Insured | Policy Number | Insurance Company | Type(s) (see above) | Year of Issue | Face Amount | Replace* | 1035 Ex |
|---|---|---|---|---|---|---|---|
| | | | | | | ☐ yes | ☐ yes |
| | | | | | | ☐ yes | ☐ yes |
| | | | | | | ☐ yes | ☐ yes |
| | | | | | | ☐ yes | ☐ yes |

* **Replace** means that the insurance being applied for may replace, change or use any monetary value of any existing or pending life insurance policy or annuity.  If replacement may be involved, complete and submit replacement-related forms.  Please note: certain states require completion of replacement related forms even when other life insurance or annuities are not being replaced by the policy being applied for.

## Limited Temporary Life Insurance Eligibility

**16. Health and Age Questions**  *(If any proposed insured answers yes to either question, temporary insurance is not available, the agreement will be void and any payment submitted will be refunded.)*

A. Has any proposed insured ever had a heart attack, stroke, cancer, diabetes or disorder of the immune system, or during the last two years been confined in a hospital or other health care facility or been advised to have any diagnostic test or surgery not yet performed?  ☐ yes ☒ no

B. Is any proposed insured age 71 or above?  ☐ yes ☒ no

## Nonmedical Questions

**17. Background Information**  *(Complete questions A through F for all proposed insureds who are applying. If yes answer applies to any proposed insured, provide details specified after each question.)*

A. Do any proposed insureds intend to travel or reside outside of the United States or Canada within the next two years?  ☐ yes ☒ no
*(If yes, list proposed insured's name, country, date, length of stay and purpose.)* _____

B. In the past five years, have any proposed insureds participated in, or do they intend to participate in: any flights as a trainee, pilot or crew member, scuba diving, skydiving or parachuting, ultralight aviation, auto racing, cave exploration, hang gliding, boat racing, mountaineering, extreme sports or other hazardous activities?  ☐ yes ☒ no
*(If yes, circle the applicable activities and complete the Aviation and/or Avocation Questionnaire.)*

C. Have any proposed insureds:
· 1) During the past 90 days submitted an application for life insurance to any other company or begun the process of filling out an application?  ☐ yes ☒ no
*(If yes, list proposed insured's name, company name, amount applied for, purpose of insurance and if app will be placed.)*
_____

2) Ever had a life or disability insurance application modified, rated, declined, postponed, withdrawn, canceled or refused for renewal?  ☐ yes ☒ no
*(If yes, list proposed insured's name, date and reason.)*
_____

D. Have any proposed insureds ever filed for bankruptcy?  *(If yes, list proposed insured's name, chapter filed, date, reason and if discharged.)*  ☐ yes ☒ no
_____

E. In the past five years, have any proposed insureds been charged with or convicted of driving under the influence of alcohol or drugs or had any driving violations?  *(If yes, list proposed insured's name, date, state, license no. and specific violation.)*  ☐ yes ☒ no
_____

F. Have any proposed insureds ever been convicted of, or pled guilty or no contest to a felony, or do they have any such charge pending against them?  *(If yes, list proposed insured name, date, state and felony.)*  ☐ yes ☒ no

## Remarks

**18. Details and Explanations** _____

| Authorization and Signatures |
| --- |

**American General Life Insurance Company, Houston, TX**

**The United States Life Insurance Company in the City of New York, New York, NY**

The above listed life insurance company as selected on page one of this application is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments. In this application, "Company" refers to the insurance company which was selected on page one.

### Authorization to Obtain and Disclose Information and Declaration

I give my consent to all of the entities listed below to give to the Company, its legal representative, American General Life Companies (AGLC) (an affiliated service company). and affiliated insurers all information they have pertaining to: medical consultations, treatments. or surgeries; hospital confinements for physical and mental conditions: use of drugs or alcohol; or any other information for me, my spouse or my minor children. Other information could include items such as. personal finances; habits; hazardous avocations; motor vehicle records from the Department of Motor Vehicles; court records: or foreign travel, etc. I give my consent for the information outlined above to be provided by: any physician or medical practitioner; any hospital, clinic or other health care facility; any insurance or reinsurance company; any consumer reporting agency or insurance support organization, my employer; or the Medical Information Bureau (MIB).

I understand the information obtained will be used by the Company to determine: (1) eligibility for insurance; and (2) eligibility for benefits under an existing policy. Any information gathered during the evaluation of my application may be disclosed to: reinsurers; the MIB: other persons or organizations performing business or legal services in connection with my application or claim; me; any physician designated by me; or any person or entity required to receive such information by law or as I may further consent.

I, as well as any person authorized to act on my behalf, may, upon written request, obtain a copy of this consent. I understand this consent may be revoked at any time by sending a written request to the Company, Attn: Underwriting Department at P.O. Box 1931, Houston, TX 77251-1931.

This consent will be valid for 24 months from the date of this application. I agree that a copy of this consent will be as valid as the original. I authorize AGLC or affiliated insurers to obtain an investigative consumer report on me. I understand that I may: request to be interviewed for the report; and receive, upon written request, a copy of such report. ⌐ Check if you wish to be interviewed.

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B. and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period: and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect under this application. or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid: and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts: or waive any of the insurer's rights or requirements.

I have received a copy of the Notices to the Proposed Insured.

Limited Temporary Life Insurance Agreement – If eligible. I have received and accepted the LTLIA. Such insurance is available only if: (1) the full first, modal premium is submitted with this application; and (2) only "no" answers have been given by any proposed insured to the Health and Age Questions.

| Under penalties of perjury, I certify: (1) that the number shown on this application is my correct Social Security or Tax ID number; and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code; and (3) that I am a U.S. person (including a U.S. resident alien). The Internal Revenue Service does not require my consent to any provisions of this document other than the certifications required to avoid backup withholding. You must cross out item (2) if you are subject to backup withholding and cross out item (3) if you are not a U.S. person (including a U.S. resident alien). |
| --- |

**Proposed Insured(s)/Owner Signature(s)**

Signed at (city, state) _____ SAN JOSE, CA _____ On (date) _____ 04/30/05 _____

(X) _____  X _____

Primary Proposed Insured (If under age 15, signature of parent or guardian)    Other Proposed Insured (If under age 15. signature of parent or guardian)

X _____

Owner (If other than proposed insured)

**Agent(s) Signature(s)**

I certify that the information supplied by the proposed insured(s)/owner has been truthfully and accurately recorded on the Part A application.

INGA VINTERE _____     IJC 34 _____

Writing Agent Name (please print)    Writing Agent #

X _____  X _____

Writing Agent Signature    Countersigned (Licensed resident agent if state required)

| If the Company needs to contact the proposed Insured(s), when would be the best time to call? | | | |
| --- | --- | --- | --- |
| Time ANY | Day of the Week ANY | Date ANY | Phone # (510) 742-1210 |

AGLC 100565-CA

Page 4 of 7

May 08 '05 08:37p    Lolita Ancheta    (408) 244-2021    p.1

**AIG** **AMERICAN GENERAL**    **Part B  Life Insurance Application**

☐ American General Life Insurance Company, Houston, TX
☐ The United States Life Insurance Company in the City of New York, New York, NY

Members of American International Group, Inc.

In this application, "Company" refers to the insurance company whose name is checked above.

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy it may issue. No other company shown is responsible for such obligations or payments.

| Personal Information |
|---|

1. **Primary Proposed Insured**
   Name EFREN DE CASTRO    Date of Birth 04/13/54    Social Security # 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

2. **Other Proposed Insured**
   Name N/A    Date of Birth _____    Social Security # _____

3. **Children** *(Provide name and date of birth for all children.)*
   _____
   _____

| Medical History |
|---|

4. **Physician Information**
   Name and address of each proposed insured's personal physician(s). *(Write None if proposed insured(s) do not have one.)*
   Primary Proposed Insured KAISER PERMANENTE SANTA TERESA SAN JOSE CA
   Other Proposed Insured MEDICAL RECORDS # 1430496    1500-464-4000
   Child(ren) _____
   Name of insured, date, reason, findings and treatment at last visit JAN . 2005  UP
   PHYSICAL CHECK-UP - FOLLOW TO CHECK BLOOD
   PRESSURE - CHEST U.S DIAGNOSED W/ HIGH BP
   2003 .

5. **Height and Weight**
   Primary Proposed Insured 5 ft. 6 in. 164 lbs. Other Proposed Insured ___ ft. N/A in. ___ lbs.
   Child Name _____ ft. ___ in. ___ lbs. If less than 1 yr. old, weight at birth _____
   Child Name _____ ft. ___ in. ___ lbs. If less than 1 yr. old, weight at birth _____
   Child Name _____ ft. ___ in. ___ lbs. If less than 1 yr. old, weight at birth _____
   Has any proposed insured had any weight change in excess of 10 lbs. in the past year? ☐ yes ☑ No If yes, complete:
   Name _____ Loss ☐ lbs. Gain ☐ lbs. Reason _____

6. **Family History**

| | Age if Living | Age at Death | Heart Disease? | Cancer History? |
|---|---|---|---|---|
| **Primary Proposed Insured** | | | | |
| Father | | 62 | ☑ No ☐ Yes, age of onset ___ | ☑ No ☐ Yes, age of onset ___ Type _____ |
| Mother | | 60 | ☑ No ☐ Yes, age of onset ___ | ☐ No ☑ Yes, age of onset 60 Type PANCREATIC CANCER |
| **Other Proposed Insured** | | | | |
| Father | N | A | ☐ No ☐ Yes, age of onset ___ | ☐ No ☐ Yes, age of onset ___ Type _____ |
| Mother | | | ☐ No ☐ Yes, age of onset ___ | ☐ No ☐ Yes, age of onset ___ Type _____ |

AGLC 100568-2003    Page 1 of 4

May 08' 05 08:38p    Lolita Ancheta                    (408) 244-2021           p.2

---

**7. Personal Health History**

*Complete questions A through G for all proposed insureds who are applying. If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

**A.** Has any proposed insured ever been diagnosed as having, been treated for, or consulted a licensed health care provider for:

1) heart disease, heart attack, chest pain, irregular heartbeat, heart murmur, high cholesterol, high blood pressure or other disorder of the heart? ☑ yes ☐ no
2) a blood clot, aneurysm, stroke, or other disease, disorder or blockage of the arteries or veins? ☐ yes ☑ no
3) cancer, tumors, masses, cysts or other such abnormalities? ☐ yes ☑ no
4) diabetes, a disorder of the thyroid or other glands or a disorder of the immune system, blood or lymphatic system? ☐ yes ☑ no
5) colitis, hepatitis or a disorder of the esophagus, stomach, liver, pancreas, gall bladder or intestine? ☐ yes ☑ no
6) a disorder of the kidneys, bladder, prostate or reproductive organs or sugar or protein in the urine? ☐ yes ☑ no
7) asthma, bronchitis, emphysema, sleep apnea or other breathing or lung disorder? ☐ yes ☑ no
8) seizures, a disorder of the brain or spinal cord or other nervous system abnormality, including a mental or nervous disorder? ☐ yes ☐ no
9) arthritis, muscle disorders, connective tissue disease or other bone or joint disorders? ☐ yes ☐ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| A I - DIAGNOSED WITH HIGH BLOOD PRESSURE IN 2002 | |
| DR. RAMOS PHYSICIANS MEDICAL GROUP SAN JOSE CA | |
| (408) 272-1408 - WOULD NOT REIMBURSE FULL ADDRESS OF | |
| DR. POULITA RAMOS. BEEN TAKING SINCE 2003 | |
| SWITCHED TO ANOTHER DOCTOR IN 2005 DR. HODNGTON | |
| SANTA TERESA KAISER BRANNUNTE. - UNDER CONTROL. | |

**B.** Is any proposed insured currently taking any medication, treatment or therapy or under medical observation? ☑ yes ☐ no
*(If yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| MEDICATIONS FOR HYPERTENSION : | |
| HYDROCHLOROTHIAZIDE 25 mg | 1 tablet a day |
| METOPROLOL 25 mg | 1 tab a day |

**C.** Has any proposed insured in the past three years had but not sought treatment for:

1) fainting spells, nervous disorder, headaches, convulsions or paralysis? ☐ yes ☑ no
2) any pain or discomfort in the chest or shortness of breath? ☐ yes ☑ no
3) disorders of the stomach, intestines or rectum, or blood in the urine? ☐ yes ☑ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| | |

| Name of Proposed Insured | Details |
|---|---|
| MEDICATIONS FOR HYPERTENSION : | |
| HYDROCHLOROTHIAZIDE 25 mg | 1 tablet a day |
| METOPROLOL 25 mg | 1 tab a day |

May 08' 05 08:38p    Lolita 'Ancheta    (408) 244-2021    p.3

**Personal Health History (cont.)**

*If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

D. Has any proposed insured ever

1) sought or received advice, counseling or treatment by a medical professional for the use of alcohol or drugs, including prescription drugs? ☐ yes ☒ no

2) used cocaine, marijuana, heroin, controlled substances or any other drug, except as legally prescribed by a physician? ☐ yes ☒ no

*(If answered to D1 or D2, complete Drug/Alcohol Questionnaire.)*

E. Has any proposed insured ever been diagnosed or treated by any member of the medical profession for AIDS Related Complex (ARC) or Acquired Immune Deficiency Syndrome (AIDS)? *(If yes, explain.)* ☐ yes ☐ no

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

F. In the past 10 years, has any proposed insured

1) been hospitalized, consulted a health care provider or had any illness, injury or surgery? ☐ yes ☒ no
2) had any laboratory tests, treatments or diagnostic procedures, including x-rays, scans or EKGs? ☒ yes ☐ no
3) been advised to have any diagnostic test, hospitalization or treatment that was not completed? ☐ yes ☒ no
4) received or claimed disability or hospital indemnity benefits or a pension for any injury, sickness, disability or impaired condition? ☐ yes ☒ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| F2 — HEAD X-RAY IN 1998 — JOB REQUIREMENTS | |
| NEGATIVE — HEA WORK CLINIC MANILA PHILIPPINES. | |
| PHILIPPINE AIR LINES | |
| | |
| | |

G. Does any proposed insured have any symptoms or knowledge of any other condition that is not disclosed above? *(If yes, explain.)* ☐ yes ☒ no

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

AGLC 100565-2001    Page 3 of 4

May 08 05 08:38p    Lolita Ancheta        (408) 244-2021        p.4

| Statements and Signatures |
| --- |

**Statement by the Proposed Insured(s)**

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect pursuant to this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurer's rights or requirements.

**Fraud**

Any person who, with intent to defraud or facilitate a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

**Proposed Insured(s) Signature(s)**

Signed at (city, state) _SAN JOSE CA_    On (date) _MAY 7, 2005_

X _Primitivo Custio_    X _____

Primary Proposed Insured (if under age 15, signature of parent or guardian)    Other Proposed Insured (if under age 15, signature of parent or guardian)

**Signature(s) of Interviewer(s)**

To be signed by all interviewers, as applicable

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

_____    _____
Writing Agent Name (please print)    Writing Agent #

X _____    X _____
Writing Agent Signature    Countersigned (Licensed resident agent if state required)

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

_____    _____
Other Company Representative Name (please print)    Company

X _____
Other Company Representative Signature

**Paramedical Examiner/Medical Doctor Signature**

Agent should inform paramed or medical doctor of proper location to send form upon completion.

I certify that this exam was conducted the _7th_ day of _MAY_ 20 _05_, at _9:30_ ☑ am ☐ pm

Examiner's Address _3A1B0 ESTATE ST FREMONT CA 94538_

Examiner's Phone # _(510) 790-6211_

Examiner's Name _NEMESIO ANCHETA_

Examiner's Signature X _Nemesio Ancheta_

Paramed: Use company stamp below.

AGLC 100548-2003    Page 4 of 4

Renewable Level Benefit Term Life Policy
Premiums Payable During Term
Insurance Payable in Event of Death Prior to Expiry Date
New Policy Option

Adjustable Premium

No Dividends
Re-Entry Option



Insurance Service Center for:

**American General Life
Insurance Company**

January 16, 2007

Inga Vintere
5460 S Quebec St Ste 150
Greenwood Village CO 80111-1943

***IMPORTANT INFORMATION REGARDING POLICY***

| | |
|---|---|
| Policy Number: | YME0214554 |
| Insured: | Efren V De Castro |

| | |
|---|---|
| Policy Date: | June 8, 2005 |
| Billing Frequency: | Monthly |
| Billing Type: | Preauthorized Check |

| | |
|---|---|
| Mode Premium: | $0.00 |
| Amount Received: | $0.00 |

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

**SPECIAL INSTRUCTIONS AND DELIVERY REQUIREMENTS DUE:**

NONE

**DELIVERY PERIOD EXPIRES:   July 8, 2005**

American General Life

AGENT:          1JC34

AGENCY:        000001JC19

CONIS

**American General Life Insurance Company**
*Member of American International Group, Inc.*
Springfield Service Center: New Business Department · P.O. Box 19518 · Springfield, IL 62794-9518 · 1-800-528-2011

 **AMERICAN GENERAL**

**American General Life Insurance Company**
**AIG Life Insurance Company**
*A member company of American International Group, Inc.*

### Policyowner Acknowledgement of Policy Delivery or
### Producer's Certification of Mailing of Policy to the Policyowner

Policyowner:  Efren V De Castro                    Policy Contract Number:    YME0214554

Insured/Annuitant:  Efren V De Castro

#### Policyowner Acknowledgement of Policy Delivery

Execution of this receipt by the Policyowner constitutes an acknowledgement of delivery.

Policy contract provisions regarding the rights to return the policy and receive a refund of premiums will begin as of the date this policy receipt is signed.

Terms of this policy receipt are subject to the provisions of the policy contract and any applicable laws and regulations.

Policyowner Signature: _____          Date: _____

Agent Name: _____

Agent Signature: _____          Date: _____

#### Agent Certification of Mailing of Policy to the Policyowner

Because the policy contract was mailed to the Policyowner, no signature was obtained.  However, I hereby declare that the policy contract was mailed to the Policyowner on the date entered below and that I have retained in my files evidence of the mailing.

Date Mailed to Policyholder: _____

Agent Name: _____

Agent Signature: _____          Date: _____

AGLC101336                    Agent Copy                    CA

 **AMERICAN GENERAL**

**Privacy ID# DCYAGLYME0214554YN4NN**

Efren V De Castro
1058 Woodminster Dr
San Jose, CA, 95121-2776

# Important Privacy Choices for California Consumers

You have the right to control whether we share some of your personal information.
Please read the following information carefully before you make your choices below.

### Your Rights

You have the following rights to restrict the sharing of personal and financial information with our affiliated companies (companies we own or control) and other companies that we do business with. Nothing in this form prohibits the sharing of information necessary: to follow the law; as permitted by law; or to service your policy, contract, or account. This includes sending you information about other products or services.

### Your Choices

1.  **Restrict Information Sharing With Companies We Own or Control (Affiliates):** Unless you check "No", we may share personal and financial information with our affiliated companies for marketing purposes.

    ☐ NO. Please do not share my personal and financial information with your affiliated companies for marketing purposes.

2.  **Restrict Information Sharing With Other Companies We Do Business With To Provide Financial Products Or Services:** Unless you check "No", we may share personal and financial information with outside companies we contract with to provide financial products or services to you.

    **For the purposes of this choice the phrases "other companies we do business with" and "outside companies we contract with" mean companies with whom we jointly offer a financial service or product (have a joint marketing arrangement or relationship), as permitted by law.

    ☐ NO. Please do not share my personal and financial information with outside companies you contract with to provide financial products or services under a joint marketing arrangement.

### Time Sensitive Reply

You may make your privacy choice(s) at any time. Your choice(s) marked here will remain in force unless you tell us to change them. If we do not hear from you, we may share some of your information with affiliated companies and other companies we do business with to provide products or services, as described above.

Name:  Efren V De Castro                    Account or Policy Number(s):      YME0214554

Phone Number:                               Signature:

---

To exercise your choice(s) do one of the following:

(1) Post your privacy choice(s) on the Privacy website: https://privacy.aigag.com/optout;

(2) Fill out, sign and send back this form to us by using the envelope provided* (you may want to make a copy for your records);

(3) Fill out, sign and fax this form to our toll-free fax number: 888-874-8960.

**\*DO NOT INCLUDE ANYTHING OTHER THAN THIS NOTICE IN THIS ENVELOPE AS IT MAY DELAY PROCESSING.**

---

AGLC101068                                                                              Rev0505

## AMERICAN GENERAL LIFE Insurance Company
### P.O. Box 4373 Houston, TX 77210-4373 (800) 487-5433

CHECKBOOK REMINDER
(Please substitute for any previous slip referring to this policy)

| (Name of Insured) | (Policy) |
|---|---|
| Efren V De Castro | YME0214554 |

Please remember to deduct __$0.00__ on day __15__ of each month a premium is due. Your premium will be automatically paid by the Pre-Authorized Check Plan premium.

Notice: If you change your checking account to another bank, please complete the form below and mail immediately to the address shown.

AUTHORIZATION TO HONOR PRE-AUTHORIZED PAYMENTS DRAWN AND PAYABLE TO:

AMERICAN GENERAL LIFE Insurance Company                    ATTACH VOIDED CHECK TO COMPLETED FORM

As a convenience to me, I hereby request and authorize you, or your Agent Bank, to initiate debit entries on my checking account maintained at the bank named below hereof for the periodic payment to the company named above, hereinafter called COMPANY, of premiums due and/or loan repayment on the policy(ies) shown below, and, if a mutual fund program is indicated below, to the broker/dealer or its nominee or to the funds shown below for mutual fund subscription payments, and if a savings and loan savings account is indicated below, to the savings and loan association shown below for deposit to the indicated savings account and if other amounts are designated, to the designated payee.

It is agreed that:

1.  Debit entries shall be drawn on or about the dates on which payments are due.
2.  The COMPANY shall incur no liability by reason of the dishonor of any such debit entries.
3.  Any requirement for giving notice of premium due on the insurance policies shall be waived as long as this plan is in effect.
4.  This authorization shall not become effective unless and until the insurance policies are approved and shall relate only to insurance premiums, policy loan repayment, mutual fund subscription payments or deposits to savings accounts falling due on or after the issue date of said insurance policies.
5.  This plan shall continue in effect unless and until terminated by COMPANY or me by thirty (30) days written notice to the other party. COMPANY may terminate the plan immediately if any debit entries are not paid upon presentation.
6.  Amounts drawn shall be distributed by Agent Bank to COMPANY, or the funds or savings and loan associations named hereon within fifteen (15) days after presentation of debit entries to bank depositor named hereon.
7.  This service shall apply to policies and fund accounts listed hereon.

This authorization is applicable (please check premium payment desired) to the following:

| POLICY NUMBER | NAME OF INSURED | MONTHLY | QUARTERLY | SEMI-ANNUAL | ANNUAL |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Expressly recognizing that the premiums on the above policy(ies) are due in accordance with the provision therein and that the COMPANY hereby in no way waives or modifies the premium due date or any other terms of the policy(ies).

I request that debit entries be drawn under this authority on day ___ each month a premium is due. If no date is indicated, debit entries will be drawn on the due date, or earliest due date of the policy(ies).

NAME OF BANK

ADDRESS                                    CITY                STATE              ZIP CODE

ACCOUNT NO.                    DATE          SIGNATURE OF DEPOSITER AS IT APPEARS ON BANK RECORDS

# AIG AMERICAN GENERAL

# Privacy Notice

AIG American General knows that your privacy is important. You have received this notice as required by law and because you are now or may be a customer of one of our companies. This notice will advise you of the types of Nonpublic Personal Information we collect, how we use it, and what we do to protect your privacy.

"Nonpublic Personal Information" refers to personally identifiable information that is not available to the public.

"Employees, Representatives, Agents, and Selected Third Parties" refers to individuals or entities who act on our behalf.

- Our Employees, Representatives, Agents, and Selected Third Parties may collect Nonpublic Personal Information about you, including information:

  - Given to us on applications or other forms;

  - About transactions with us, our affiliates, or third parties;

  - From others, such as credit reporting agencies, employers, and federal and state agencies.

- The types of Nonpublic Personal Information we collect depends on the products we offer to you and may include your: name; address; Social Security Number; account balances; income; assets; insurance premiums; coverage and beneficiaries; credit reports; marital status; and payment history. We may also collect Nonpublic Personal Health Information, such as medical reports, to underwrite insurance policies, process claims, or for other related functions.

- We restrict access to Nonpublic Personal Information to those Employees, Representatives, Agents, or Selected Third Parties who provide products or services to you and who have been trained to handle Nonpublic Personal Information as described in this Notice.

- We have policies and procedures that direct our Employees, Representatives, Agents and Selected Third Parties acting for us, on how to protect and use Nonpublic Personal Information.

- We have physical, electronic, and procedural safeguards in place that were designed to protect Nonpublic Personal Information.

- We do not share Nonpublic Personal Information about you except as allowed by law.

- We may disclose all types of Nonpublic Personal Information that we collect, including information regarding your transactions or experiences with us, when needed, to:

  (i) affiliated AIG American General companies, including the American International Group, Inc. family of companies, and Employees, Representatives, Agents, and Selected Third Parties as permitted by law; or

  (ii) other organizations with which we have joint marketing agreements as permitted by law.

- The types of companies and persons to whom we may disclose Nonpublic Personal Information as permitted by law include: banks; attorneys; trustees; third-party administrators; insurance agents; insurance companies; insurance support organizations; credit reporting agencies; registered broker-dealers; auditors; regulators; and reinsurers.

- We do not share your Nonpublic Personal Health Information unless authorized by you or allowed by law.

- Our privacy policy applies, to the extent required by law, to our agents and representatives when they are acting on behalf of AIG American General.

- You will be notified if our privacy policy changes.

- Our privacy policy applies to current and former customers.

**This Privacy Notice is given to you for your information only. You do not need to call or take any action.**

This Privacy Notice is provided on behalf of the following companies:

AGC Life Insurance Company, AIG Life Insurance Company of Puerto Rico, AIG Life Insurance Company, AIG Life of Bermuda, Ltd., AIG Premier Insurance Company, AIG Worldwide Life Insurance of Bermuda, Ltd, American General Assurance Company, American General Equity Services Corporation, American General Indemnity Company, American General Life and Accident Insurance Company, American General Life Insurance Company, American General Property Insurance Company of Florida, American General Property Insurance Company, American General Securities Incorporated, American International Life Assurance Company of New York, Delaware American Life Insurance Company, Pacific Union Assurance Company, The United States Life Insurance Company in the City of New York.

**California, New Mexico and Vermont Residents Only:** Following the law of your state, we will not disclose nonpublic personal financial information about you to nonaffiliated third parties (other than as permitted by law) unless you authorize us to make that disclosure. Your authorization must be in writing. If you wish to authorize us to disclose your nonpublic personal financial information to nonaffiliated third parties, you may write to us at: American General Service Center, P.O. Box 4373, Houston, Texas 77210-4373.

© 2006 American International Group, Inc. All rights reserved.

# LIFE INSURANCE BUYER'S GUIDE

### This Guide Does Not Endorse
### Any Company or Policy

This guide can help you when you shop for life insurance. It discusses how to:

- Find a Policy That Meets Your Needs and Fits Your Budget

- Decide How Much Insurance You Need

- Make Informed Decisions When You buy a Policy

The National Association of Insurance Commissioners is an association of state insurance regulatory officials. This association helps the various insurance departments to coordinate insurance laws for the benefit of all consumers.

## IMPORTANT THINGS TO CONSIDER

1. Review your own insurance needs and circumstances. Choose the kind of policy that has benefits that most closely fit your needs. Ask an agent or company to help you.

2. Be sure that you can handle premium payments. Can you afford the initial premium? If the premium increases later and you still need insurance, can you still afford it?

3. Don't sign an insurance application until you review it carefully to be sure all the answers are complete and accurate.

4. Don't buy life insurance unless you intend to stick with your plan. It may be very costly if you quit during the early years of the policy.

5. Don't drop one policy and buy another without a thorough study of the new policy and the one you have now. Replacing your insurance **may be costly.**

6. Read your policy carefully. Ask your agent or company about anything that is not clear to you.

7. Review your life insurance program with your agent or company every few years to keep up with changes in your income and your needs.

## Buying Life Insurance

When you buy life insurance, you want coverage that fits your needs.

**First,** decide how much you need - and for how long - and what you can afford to pay. Keep in mind the major reason you buy life insurance is to cover the financial effects of unexpected or untimely death. Life insurance can also be one of many ways you plan for the future.

**Next,** learn what kinds of policies will meet your needs and pick the one that best suits you.

**Then,** choose the combination of policy premium and benefits that emphasize protection in case of early death, or benefits in case of long life, or a combination of both.

It makes good sense to ask a life insurance agent or company to help you. An agent can help you review your insurance needs and give you information about the available policies. If one kind of policy doesn't seem to fit your needs, ask about others.

This guide provides only basic information. You can get more facts from a life insurance agent or company or at your public library.

## What About the Policy You Have Now?

- If you are thinking about dropping a life insurance policy, here are some things you should consider:

- If you decide to replace your policy, don't cancel your old policy until you have received the new one. You then have a minimum period to review your new policy and decide if it is what you wanted.

- It may be costly to replace a policy. Much of what you paid in the early years of the policy you have now, paid for the company's cost of selling and issuing the policy. You may pay this type of cost again if you buy a new policy.

- Ask your tax advisor if dropping your policy could affect your income taxes.

- If you are older or your health has changed, premiums for the new policy will often be higher. You will not be able to buy a new policy if you are not insurable.

- You may have valuable rights and benefits in the policy you now have that are not in the new one.

- If the policy you have now no longer meets your needs, you may not have to replace it. You might be able to change your policy or add to it to get the coverage or benefits you now want.

- At least in the beginning, a policy may pay no benefits for some causes of death covered in the policy you have now.

In all cases, if you are thinking of buying a new policy, check with the agent or company that issued you the one you have now. When you bought your old policy, you may have seen an illustration of the benefits of your policy. Before replacing your policy, ask your agent or company for an updated illustration. Check to see how the policy has performed and what you might expect in the future, based on the amounts the company is paying now.

## How Much Do You Need?

Here are some questions to ask yourself:

- How much of the family income do I provide? If I were to die early, how would my survivors, especially my children, get by? Does anyone else depend on me

financially, such as a parent, grandparent, brother or sister?

- Do I have children for whom I'd like to set aside money to finish their education in the event of my death?

- How will my family pay final expenses and repay debts after my death?

- Do I have family members or organizations to whom I would like to leave money?

- Will there be estate taxes to pay after my death?

- How will inflation affect future needs?

As you figure out what you have to meet these needs, count the life insurance you have now, including any group insurance where you work or veteran's insurance. Don't forget Social Security and pension plan survivor's benefits. Add other assets you have: savings, investments, real estate and personal property. Which assets would your family sell or cash in to pay expenses after your death?

## What Is The Right Kind of Life Insurance?

All policies are not the same. Some give coverage for your lifetime and others cover you for a specific number of years. Some build up cash values and others do not. Some policies combine different kinds of insurance, and others let you change from one kind of insurance to another. Some policies may offer other benefits while you are still living. Your choice should be based on your needs and what you can afford.

There are two basic types of life insurance: **term insurance** and **cash value insurance.** Term insurance generally has lower premiums in the early years, but does not build up cash values that you can use in the future. You may combine cash value life insurance with term insurance for the period of your greatest need for life insurance to replace income.

**Term Insurance** covers you for a term of one or more years. It pays a death benefit only if you die in that term. Term insurance generally

offers the largest insurance protection for your premium dollar. It generally does not build up cash value.

You can renew most term insurance policies for one or more terms even if your health has changed. Each time you renew the policy for a new term, premiums may be higher. Ask what the premiums will be if you continue to renew the policy. Also ask if you will lose the right to renew the policy at some age. For a higher premium, some companies will give you the right to keep the policy in force for a guaranteed period at the same price each year. At the end of that time you may need to pass a physical examination to continue coverage, and premiums may increase.

You may be able to trade many term insurance policies for a cash value policy during a conversion period - even if you are not in good health. Premiums for the new policy will be higher than you have been paying for the term insurance.

**Cash Value Life Insurance** is a type of insurance where the premiums charged are higher at the beginning than they would be for the same amount of term insurance. The part of the premium that is not used for the cost of insurance is invested by the company and builds up a cash value that may be used in a variety of ways. You may borrow against a policy's cash value by taking a policy loan. If you don't pay back the loan and the interest on it, the amount you owe will be subtracted from the benefits when you die, or from the cash value if you stop paying premiums and take out the remaining cash value. You can also use your cash value to keep insurance protection for a limited time or to buy a reduced amount without having to pay more premiums. You also can use the cash value to increase your income in retirement or to help pay for needs such as a child's tuition without canceling the policy. However, to build up this cash value, you must pay higher premiums in the earlier years of the policy. Cash value life insurance may be one of several types; whole life, universal life and variable life are all types of cash value insurance.

**Whole Life Insurance** covers you for as long as you live if your premiums are paid. You generally pay the same amount in premiums for as long as you live. When you first take out the policy, premiums can be several times higher than you would pay initially for the same amount of term insurance. But they are smaller than the premiums you would eventually pay if you were to keep renewing a term policy until your later years.

Some whole life policies let you pay premiums for a shorter period such as 20 years, or until age 65. Premiums for these policies are higher since the premium payments are made during a shorter period.

**Universal Life Insurance** is a kind of flexible policy that lets you vary your premium payments. You can also adjust the face amount of your coverage. Increases may require proof that you qualify for the new death benefit. The premiums you pay (less expense charges) go into a policy account that earns interest. Charges are deducted from the account. If your yearly premium payment plus the interest your account earns is less than the charges, your account value will become lower. If it keeps dropping, eventually your coverage will end. To prevent that, you may need to start making premium payments, or increase your premium payments, or lower your death benefits. Even if there is enough in your account to pay the premiums, continuing to pay premiums yourself means that you build up more cash value.

**Variable Life Insurance** is a kind of insurance where the death benefits and cash values depend on the investment performance of one or more separate accounts, which may be invested in mutual funds or other investments allowed under the policy. Be sure to get the prospectus from the company when buying this kind of policy and STUDY IT CAREFULLY. You will have higher death benefits and cash value if the underlying investments do well. Your benefits and cash value will be lower or may disappear if the investments you chose didn't do as well as you expected. You may pay an extra premium for a guaranteed death benefit.

## Life Insurance Illustrations

You may be thinking of buying a policy where cash values, death benefits, dividends or premiums may vary based on events or situations the company does not guarantee (such as interest rates). If so, you may get an illustration from the agent or company that helps explain how the policy works. The illustration will show how the benefits that are not guaranteed will change as interest rates and other factors change. The illustration will show you what the company guarantees. It will also show you what could happen in the future. Remember that nobody knows what will happen in the future. You should be ready to adjust your financial plans if the cash value doesn't increase as quickly as shown in the illustration. You will be asked to sign a statement that says you understand that some of the numbers in the illustration are not guaranteed.

## Finding a Good Value in Life Insurance

After you have decided which kind of life insurance is best for you, compare similar policies from different companies to find which one is likely to give you the best value for your money. A simple comparison of the premiums is not enough. There are other things to consider. For example:

* Do premiums or benefits vary from year to year?

* How much do the benefits build up in the policy?

* What part of the premiums or benefits is not guaranteed?

* What is the effect of interest on money paid and received at different times on the policy?

Once you have decided which type of policy to buy, you can use a cost comparison index to help you compare similar policies. Life insurance agents or companies can give you information about several different kinds of indexes that each work a little differently. One type helps you compare the costs between two policies if you give up the policy and take out the cash value. Another helps you compare your costs if you don't give up your policy before its coverage ends. Some help you decide what kind of questions to ask the agent about the numbers used in an illustration. Each index is useful in some ways, but they all have shortcomings. Ask your agent which index will be most helpful to you. Regardless of which index you use, compare index numbers only for similar policies - those that offer basically the same benefits, with premiums payable for the same length of time.

Remember that no one company offers the lowest cost at all ages for all kinds and amounts of insurance. You should also consider other factors:

* How quickly does the cash value grow? Some policies have low cash values in the early years that build quickly later on. Other policies have a more level cash value build-up. A year-by-year display of values and benefits can be very helpful. (The agent or company will give you a policy summary or an illustration that will show benefits and premiums for selected years.)

* Are there special policy features that particularly suit your needs?

* How are nonguaranteed values calculated? For example, interest rates are important in determining policy returns. In some companies increases reflect the average interest earnings on all of that company's policies regardless of when issued. In others, the return for policies issued in a recent year, or a group of years, reflects the interest earnings on that group of policies; in this case, amounts paid are likely to change more rapidly when interest rates change.

## American General Life Insurance Company

## CALIFORNIA LIFE AND HEALTH INSURANCE
## GUARANTY ASSOCIATION ACT
### SUMMARY DOCUMENT AND DISCLAIMER

Residents of California who purchase life and health insurance and annuities should know that the insurance companies licensed in this state to write these types of insurance are members of the California Life and Health Insurance Guaranty Association ("CLHIGA"). The purpose of this Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided through the Association is not unlimited, as noted in the box below, and is not a substitute for consumers' care in selecting insurers.

**The California Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in California. You should not rely on coverage by the Association in selecting an insurance company or in selecting an insurance policy.**

**Coverage is *NOT* provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.**

**Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.**

**Policyholders with additional questions should first contact their insurer or agent or may then contact**

<table>
<tr><td align="center">**California Life and Health Insurance<br>Guaranty Association<br>P.O. Box 17319<br>Beverly Hills, CA 90209-3319**</td><td align="center">or</td><td align="center">**Consumer Service Division<br>California Department of Insurance<br>300 South Spring Street<br>Los Angeles, California 90013**</td></tr>
</table>

Below is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Association.

### COVERAGE

Generally, individuals will be protected by the California Life and Health Insurance Guaranty Association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by a member insurer. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

(please turn to back of page)

L 5322-5

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Guaranty Association if:

* Their insurer was not authorized to do business in this state when it issued the policy or contract;
* Their policy was issued by a health care service plan (HMO), Blue Cross, Blue Shield, a charitable organization, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company, an insurance exchange, or a grants and annuities society;
* They are eligible for protection under the laws of another state. This may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state.

The Guaranty Association also does not provide coverage for:

* Unallocated annuity contracts; that is, contracts which are not issued to and owned by an individual and which guarante rights to group contract holders, not individuals;
* Synthetic guaranteed interest contracts;
* Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
* Any policy of reinsurance unless an assumption certificate was issued;
* Interest rate yields that exceed an average rate;
* Any portion of a contract that provides dividends or experience rating credits.

## LIMITS ON AMOUNTS OF COVERAGE

The Act limits the Association to pay benefits as follows:

## LIFE AND ANNUITY BENEFITS

* 80% of what the life insurance company would owe under a life policy or annuity contract up to
* $100,000 in cash surrender values,
* $100,000 in present value of annuities, or
* $250,000 in life insurance death benefits.
* A maximum of $250,000 for any one insured life no matter how many policies and contracts there were with the same company, even if the policies provided different types of coverages.

## HEALTH BENEFITS

* A maximum of $200,000 of the contractual obligations that the health insurance company would owe were it not insolvent. The maximum may increase or decrease annually based upon changes in the health care cost component of the consumer price index.

## PREMIUM SURCHARGE

Member insurers are required to recoup assessments paid to the Association by way of a surcharge on premiums charged for health insurance policies to which the Act applies.

LTG 2000AG

STATEMENT OF POLICY COST AND BENEFIT INFORMATION
15 YEAR RENEWABLE LEVEL BENEFIT TERM LIFE INSURANCE

American General Life Insurance Company
2727-A Allen Parkway
P.O. Box 1931
Houston, Texas 77210

AGENT Inga Vintere
5460 S Quebec St Ste 150
Greenwood Village CO 80111-1943

POLICY NO YME0214554                    INSURED    Efren V De Castro                    AGE 51

| POLICY YEAR | ANNUAL PREMIUM (CURRENT RATES) | ANNUAL PREMIUM (MAXIMUM RATES) (SHALL NOT EXCEED RATES SHOWN BELOW) | GUARANTEED DEATH PAYMENT BEGIN. OF YR. |
|---|---|---|---|
| 1 | $805.00 | $805.00 | $250,000 |
| 2 | $805.00 | $805.00 | $250,000 |
| 3 | $805.00 | $805.00 | $250,000 |
| 4 | $805.00 | $805.00 | $250,000 |
| 5 | $805.00 | $805.00 | $250,000 |
| 6 | $805.00 | $805.00 | $250,000 |
| 7 | $805.00 | $805.00 | $250,000 |
| 8 | $805.00 | $805.00 | $250,000 |
| 9 | $805.00 | $805.00 | $250,000 |
| 10 | $805.00 | $805.00 | $250,000 |
| 11 | $805.00 | $805.00 | $250,000 |
| 12 | $805.00 | $805.00 | $250,000 |
| 13 | $805.00 | $805.00 | $250,000 |
| 14 | $805.00 | $805.00 | $250,000 |
| 15 | $805.00 | $805.00 | $250,000 |
| 16 | $10,995.00 | $11,760.00 | $250,000 |
| 17 | $11,920.00 | $12,990.00 | $250,000 |
| 18 | $12,902.50 | $14,310.00 | $250,000 |
| 19 | $14,020.00 | $15,750.00 | $250,000 |
| 20 | $15,390.00 | $17,375.00 | $250,000 |
| AT AGE 62 | $805.00 | $805.00 | $250,000 |
| AT AGE 65 | $805.00 | $805.00 | $250,000 |

| COST INDEXES | LIFE INSUR.NET PAYMENT COST INDEX | | LIFE INSUR.SURRENDER COST INDEX | |
|---|---|---|---|---|
| | 10TH YR.* | 20TH YR.* | 10TH YR.* | 20TH YR.* |
| CURRENT RATES | 3.22 | 11.33 | 3.22 | 11.33 |
| MAXIMUM RATES | 3.22 | 12.24 | 3.22 | 12.24 |

The current premiums illustrated assume annual renewable premiums after the level term period.

The columns of this representation do not reflect the fact that, because of interest, a dollar in the future has less value than a dollar today.

*An explanation of the intended use of the life insurance cost indexes is explained in the life insurance Buyer's Guide.

Important Note -   During the thirty day period from the date of delivery of this policy, it
                   may be surrendered to the company for cancellation and a full refund
                   of any money paid.

1/16/2007

STATEMENT OF POLICY COST AND BENEFIT INFORMATION          1/16/2007

AMERICAN GENERAL LIFE INS CO          FOR ADDITIONAL INFORMATION
2727-A ALLEN PARKWAY                  ABOUT THIS POLICY CONTACT:
HOUSTON, TEXAS 77019-2115            Inga Vintere
                                      5460 S Quebec St Ste 150
                                      Greenwood Village CO 80111-1943

PREPARED FOR:    Efren De Castro

TERMINAL ILLNESS BENEFIT (TIB) RIDER

PROVIDES FOR A ONE-TIME PAYMENT IN ADVANCE OF THE DEATH BENEFIT
UNDER THE BASE CONTRACT IF THE INSURED IS TERMINALLY ILL WITH 12
MONTHS OR LESS TO LIVE. THE AMOUNT ADVANCED WILL BE CARRIED AS A
LIEN AGAINST FUTURE CONTRACT BENEFITS. THERE IS NO CHARGE FOR THIS
RIDER.

YME0214554
91401

## IMPORTANT INFORMATION

In the event you need to contact someone about your policy for any reason please contact your agent. If you have additional questions you may contact the insurance company issuing the policy at the following address and telephone number:

American General Life Insurance Company
2727-A Allen Parkway
P.O. Box 1931
Houston, Texas 77210
1-800-487-5433

## CONSUMER COMPLAINTS

If you desire to file a complaint, please follow this procedure:

1. Contact your agent.

2. Contact American General Life Insurance Company Consumer Complaint Number 1-800-528-2011 ext. 2134.

3. Contact the insurance department below only after contacts and discussions with the agent and insurer have failed to produce a satisfactory resolution to your problem.

California Department of Insurance
300 South Spring Street
Los Angeles, CA  90013
(213) 897-8921

The in-state toll free hotline number is (800) 927-4357.

Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent, company or the Department of Insurance, have your policy number available.

L4677-5



**AMERICAN**
**GENERAL**

June 3, 2005

Efren V De Castro
1058 Woodminster Dr
San Jose CA 95121-2776

Re: Efren V De Castro
Policy Number: YME0214554

Dear Efren V De Castro:

Thank you for submitting an insurance application to American General Life Insurance Company. We are pleased to be able to approve the policy. However, because of your cholesterol of 248 and your cholesterol/HDL ratio of 6.5, this coverage was approved at Standard Plus rates.

This change will result in a higher premium than was originally quoted. The coverage still represents an excellent insurance value, and your sales representative will be glad to discuss the value of this. A policy will be issued unless your sales representative advises us. If we have been notified not to issue a policy, this offer will be valid for sixty (60) days.

Should you desire the specific items that support the reason(s) listed above, please submit a written request within ninety (90) business days from the date of mailing of this letter to the address shown below. Please indicate whether you desire specific items of medical record information supplied by a medical care institution or medical professional disclosed directly to you or prefer to designate a medical professional to receive this information. Please provide the name and address of the designated medical professional. If you would like a copy of the lab results done in conjunction with your application, please complete and mail the enclosed request card.

The written request must be signed by the proposed insured or, if the proposed insured is a minor or has a legal guardian, the parent or legal guardian must sign the request. We will respond within twenty-one (21) business days of the receipt of the written request.

You can also request corrections, amendments or deletions to information discussed above. If your requested corrections, amendments or deletions are not made, you will be notified and told of the reason(s) for the refusal. In that event, you may file a statement setting forth what you think is the correct, relevant or fair information and why you disagree with our refusal to correct, amend or delete information in your file.

Please note that no coverage is in effect and any temporary life insurance agreement, if applicable, is hereby no longer in force. If you and/or the proposed owner do not wish to accept this offer, any money submitted with the application will be refunded to you or the proposed owner on the earlier of (1) the date this offer expires, or (2) the date you or the proposed owner informs us that our offer is refused or the policy is returned within the "free-look" period.

Once again, thank you for considering American General Life Insurance Company for your insurance needs. If you have any questions regarding this matter, please contact your Representative, INGA VINTERE, at 510-742-1210.

**Midwest Operations Center**
PO Box 401 • Milwaukee, WI 53201-0401

MAGLNB001

Sincerely,

Jeff Capak
New Business Department

cc:    INGA VINTERE /    1JC34

MAGLNB001